Green Bay and Mississippi Canal Co. vs. Kaukauna Water-Power Co.

THE GREEN BAY AND MISSISSIPPI CANAL COMPANY, Appellant, vs. THE KAUKAUNA WATER-POWER COMPANY and others, Respondents.

*November 27, 1887 — February 28, 1888.*

*Improvement of Fox and Wisconsin rivers: Surplus water-power: Reservation to state: Constitutional law: Taking of private property: Assumption of payment by U. S.: Adverse user: Riparian rights: Mandatory injunction: Discretion.*

1. The act for the improvement of the Fox and Wisconsin rivers, approved August 8, 1848, created a board of public works to carry on such improvement, and provided (sec. 16) that "when any lands, waters, or materials appropriated by the board to the use of said improvements shall belong to the state, such lands, waters, or materials, and so much of the adjoining land as may be valuable for hydraulic or commercial purposes, shall be absolutely reserved to the state, and whenever a water-power shall be created by reason of any dam erected or other improvements made on any of said rivers, such water-power shall belong to the state, subject to future action of the legislature." *Held:*

    (1) The state took the absolute ownership of all water-power so created, and not merely so much thereof as existed upon lands owned by the state.

(2) The act was not invalid as to surplus water-power over and above that required for the navigation of the river, on the ground that it took private property for private use. The surplus water-power was merely incidental to the improvement, and the control thereof was necessary to the proper management of the improvement.

2. The act of 1848 failed to make adequate provision for the ascertainment and payment of damages and compensation for the taking of lands, but the improvement was made and has ever since been maintained, the title thereto (except to the incidental surplus water-power) has passed to the United States, an act of Congress has provided an easy method of ascertaining the compensation to which the owners of property taken are entitled, and the United States has assumed the payment thereof. *Held,* that the defects in the act of 1848 have ceased to be of any importance as affecting the rights of the present owners of the surplus water-power.

3. Property was taken for the improvement of Fox river after March 3, 1855. The act of Congress was approved March 3, 1875, and provided for payment by the United States in cases in which " compensation is now or shall become legally owing." *Held,* that the right to compensation for the property mentioned had not been cut off by adverse user, and is a valid claim against the United States.

4. The plaintiff is the owner of the surplus water-power created by a dam which is a part of the work of improvement of Fox river. The defendants, who are riparian owners, cut through an embankment on the side of the pond created by the dam, and constructed a canal for the purpose of taking water from such pond to operate mills. They constructed headgates in the canal, which when closed would stop the water as effectually as the embankment. It is *held* that the plaintiff is entitled to an injunction restraining the defendants from drawing water from the pond, but, as an exercise of the discretion of the court, the prayer for a mandatory injunction compelling the restoration of the embankment is denied.

APPEAL from the Circuit Court for *Outagamie* County.

The plaintiff corporation controls and uses a portion of a water-power at Kaukauna, in this state, created by a dam across the Fox river at that place, which was erected for the purpose of improving the navigation of that river, and claims to own all the surplus water-power created by such

JANUARY TERM, 1888.          637

Green Bay and Mississippi Canal Co. vs. Kaukauna Water-Power Co.

dam.   The water is drawn by the plaintiff from the pond above the dam, into a canal on the north side of the river, and is there used by lessees of the plaintiff to propel machinery.   The canal is a part of the improvement, and is navigated by boats and vessels.

The defendant *The Kaukauna Water-Power Company* is the owner of the land on the south side of the river, abutting such dam, and of land above and below the same, on the river, and has constructed a canal for the purpose of taking water through it from said pond to operate mills and machinery on its land below the dam.   The other defendants are in the use of portions of the water so taken from the pond by the defendant corporation, under and by virtue of leases thereof to them executed by the defendant *The Kaukauna Water-Power Company*.   This action was brought to restrain the defendants from drawing water from said pond through the canal on the south side of the river, and also to compel the defendant *The Kaukauna Water-Power Company* to restore an embankment on lot 6, which it had removed, or to permit the plaintiff to do so.

By an act approved August 8, 1846, Congress granted to the state of Wisconsin, when it should be admitted into the Union, a quantity of land to aid in the improvement of the Fox and Wisconsin rivers, and to connect the same by a canal.   This act contains certain restrictions not material to this case.   By an act of the legislature, approved June 29, 1848, the state of Wisconsin gave its assent to the act of Congress of August 8, 1846, which operated as an acceptance by the state of the grant therein contained, upon the terms and conditions specified in the latter act.   By an act entitled "An act to provide for the improvement of the Fox and Wisconsin rivers and connecting the same by a canal," approved August 8, 1848, the legislature created a board of public works to supervise and carry on such im-

provement. Secs. 15, 16, and 17 (which are most material in this case) are as follows:

"Sec. 15. In the construction of such improvements, the said board shall have power to enter on, to take possession of, and use all lands, waters, and materials, the appropriation of which for the use of such works of improvement shall in their judgment be necessary.

"Sec. 16. When any lands, waters, or materials appropriated by the board to the use of said improvements shall belong to the state, such lands, waters, or materials, and so much of the adjoining land as may be valuable for hydraulic or commercial purposes, shall be absolutely reserved to the state, and whenever a water-power shall be created by reason of any dam erected or other improvements made on any of said rivers, such water-power shall belong to the state, subject to future action of the legislature.

"Sec. 17. When any lands, waters, or materials appropriated by the board to the use of the public in the construction of said improvements shall not be freely given or granted to the state, or the said board cannot agree with the owner as to the terms on which the same shall be granted, the superintendent, under the directions of the board, shall select an appraiser, and the owner shall select another appraiser, who together, if they are unable to agree, shall select a third, neither of whom shall have any interest, directly or indirectly, in the subject matter, nor be of kin to such owner, and said appraisers, or a majority of them, shall proceed to hear testimony and assess the benefits or damages, as the case may be, to the said owner from the appropriation of such land, water, or materials, and their award shall be conclusive unless modified as herein provided. If the owner shall neglect or refuse to appoint an appraiser as herein directed after ten days' notice of such appointment by the superintendent, then such superintendent shall make such appointment for him."

From the award of the appraisers, made pursuant to sec. 17, an appeal to the circuit court is given to either party by sec. 18 of the act, and the procedure therein prescribed in the following sections.

The plan of making the improvement under the supervision of the board of public works proved a failure, and was abandoned in 1853 by the enactment of ch. 98, Gen. Laws of that year, entitled "An act to incorporate an association for the completion of the improvement of the Fox and Wisconsin Rivers," approved July 6, 1853. This act incorporated the "Fox & Wisconsin Improvement Co.," and granted to it all the lands then unsold which had theretofore been granted by Congress to the state in aid of such improvement, subject to certain conditions specified in the act. It also granted such company "the works of improvement contemplated by the act of August 8, 1848, and by several acts supplemental thereto and amendatory thereof, and known as the 'Fox & Wisconsin Rivers Improvement,' together with all and singular the rights of way, dams, locks, canals, water-power, and other appurtenances of said works, also all the rights possessed by the state of demanding and receiving tolls and rents for the same, so far as the state possesses or is authorized to grant the same, and all privileges of constructing said works and repairing the same, and all other rights and privileges belonging to the improvement, to the same extent and in the same manner that the state now holds or may exercise such rights by virtue of the acts above referred to in this section [sec. 2]."

Ch. 112, Laws of 1856, renewed and confirmed the grant to the improvement company; but upon the condition, among others, that such company should, within ninety days after the passage of the act, make a deed of trust to three trustees to be appointed by the governor with the assent of the company, conveying to such trustees the lands thus granted to the company by the act, and all the other

property, rights, and franchises belonging to the company, in trust for certain uses and purposes therein expressed. Such conveyance was duly made by the company, as required by the act, to the trustees duly selected for that purpose.

By ch. 179, Laws of 1851, the legislature authorized the governor to enter into a contract with Morgan L. Martin for the completion of the improvement of Fox river between Green Bay and Lake Winnebago, and a contract to that effect was duly entered into, pursuant to that act, May 14, 1851. This was while the improvement was under the supervision of the board of public works. Under this contract Martin built the dam in question at Kaukauna in 1854 and 1855.

The Fox river, at the point where such dam is erected, runs nearly east. At its north end the dam abutted upon land of the improvement company, and at its south end on a lot designated as lot 5. West of lot 5, abutting on the river, are lots 6 and 7. A canal on the north side of the river is supplied with water from the pond. It is constructed with locks, and is used for purposes of navigation. The south bank of the river was but little higher than the waters of the river in its natural state, and required an embankment to keep the same within the channel of the river. The company thereupon procured from one John Hunt, who was then the owner of lots 6 and 7, an instrument in writing, dated October 6, 1854, executed and recorded as a deed, in and by which Hunt released to the Fox & Wisconsin Improvement Company, and its legal representatives, "the right to erect and forever maintain an embankment of the dimensions as surveyed by the engineer of said company, reserving to myself the right to use said embankment when completed, but not so that the same shall be injured, through lots 6 and 7, section 22, . . . also the privilege of excavating a ditch along the south or east side of said

embankment, not exceeding three feet in width, and upon the south or east side of said survey and stakes as set by said engineer." The company erected such embankment, and extended the same upon lot 5 to the dam. No authority

from the owner of lot 5 to erect or abut the dam upon that lot or to build such embankment in front of it, and no condemnation proceedings under the act of 1848 to obtain an appraisal of damages to such lot, were proved on the trial.

The Fox & Wisconsin Improvement Company having made default in the performance of the conditions of the act of 1853, and of the trust deed above mentioned, and of a certain mortgage in trust executed by said company upon all the property, rights, and franchises granted to it by the state as aforesaid, such trust deed and trust mortgage were duly foreclosed in the circuit court, and judgment for the sale of said property, rights, and franchises was entered February 4, 1864. Pursuant to that judgment, such property, franchises, etc., were sold to the plaintiff, which was a duly organized corporation, authorized by law to make such purchase. Out of the proceeds of such sale a debt of over $200,000 against the improvement, sometimes called (but erroneously) a state debt, was paid, and the improvement completed at an expense of over $43,000. Thus the trust conferred upon the state by the act of Congress of 1846 was fully performed. Such sale was confirmed by the court, and the trustees in the trust deed before mentioned, who had previously been appointed by the court as referees to sell the mortgaged and trust property, duly conveyed the same to the plaintiff, *The Green Bay & Mississippi Canal Company*. The only surviving mortgagee in trust joined as a grantor in such conveyance. By the terms of the deed the trustees, mortgagee, and referees, as aforesaid, granted, etc., to the plaintiff, its successors, etc., " the works of improvement known as the 'Fox & Wisconsin River Improvement,' together with all and singular the rights of way, dams, locks, canals, and other appurtenances of said works; the right of receiving tolls and rents for the same, and all the privileges of said works; and all other rights, powers, and privileges by the state of Wisconsin granted to and vested

in the Fox & Wisconsin Improvement Company and its trustees, or either, under and by virtue of the several acts of the legislature of the state of Wisconsin in relation thereto, approved July 6, A. D. 1853, March 31, A. D. 1855, and October 3, 1856, and the acts amendatory thereof and proceedings thereunder; to which said several acts of the legislature, and the trust deed and mortgage referred to in the judgment under which the aforesaid sale was made, reference is hereby made for a fuller and more particular description of the said works of improvement, rights, powers, privileges, etc. . . . Also all other corporate rights, privileges, franchises, powers, and property, real and personal, vested in and belonging to said company, its trustees, or both, forming a part of, or in anyway connected with, said improvement, of whatever name or nature, and from whatever source derived, and all appurtenances thereunto appertaining, including and together with all strips or parcels of land adjacent to said improvement or the water-powers created thereby, with such exceptions therefrom as are hereinafter stated." The exceptions referred to do not affect this case.

By an act of Congress, entitled "An act for the improvement of a water communication between the Mississippi river and Lake Michigan by the Wisconsin and Fox rivers," approved July 7, 1870, the secretary of war was authorized, on certain terms and conditions, to purchase the rights, franchises, and property of the plaintiff in such improvement. By ch. 416, Laws of 1871, the legislature authorized the plaintiff to make such sale. Arbitrators were duly appointed under the act of Congress to appraise the property, etc., of the plaintiff which the United States proposed to purchase. Such proceedings were thereupon had that on February 26, 1876, the arbitrators reported the total value of such property, etc., to be $1,048,070, and that the amount realized from the sale of lands granted to the state as afore-

said was $723,070, which last sum being deducted from the
total value (as required by the act of 1870) left a balance
of $325,000 to be paid for all the property and franchises
of the company. This appraisal included all water-power
and personal property owned by the plaintiff. The board
separately appraised the value of the water-power belong-
ing to the company at $140,000, and of certain personal
property at $40,000. Under the authority of the act of
1870, the secretary of war elected not to purchase such
water-power or personal property, and the same was there-
upon reserved to the plaintiff in its conveyance to the
United States of the property purchased by it. The spe-
cific description of the reserved water-power is as follows:
"The water-powers created by the dams and by the use of
the surplus water not required for the purpose of naviga-
tion, with the rights of protection and preservation ap-
purtenant thereto, and the lots, pieces, or parcels of land
necessary to the enjoyment of the same, and those acquired
with reference to the same; all subject to the right to use
the water for all purposes of navigation as the same is re-
served in leases heretofore made by said company, a blank
form of which, attached to the said report of said arbitra-
tors, is now on file in the office of the secretary of war, and
to which reference is here made, and subject, also, to all
leases, grants, and assignments made by said company, the
said lease, etc., being also reserved herefrom."

The plaintiff owns the lots on the north side of the river
along the canal on which the surplus water is used by its
lessees.

The principal defendant, *The Kaukauna Water-Power
Company*, is the owner of lots 5, 6, and 7, on the south side
of the river (or at least of the water-fronts thereof), and of
contiguous lands fronting upon the river east of and below
lot 5. These lots were purchased of the United States by one
Denniston, September 1, 1835, and the same were patented to

JANUARY TERM, 1888. 645

Green Bay and Mississippi Canal Co. vs. Kaukauna Water-Power Co.

him or his assigns, without reservation, by the United States in 1837. Said company derives its title to such lots through mesne conveyances from Denniston.

In 1876 the United States erected a new dam at Kaukauna, across Fox river, forty feet east of and below the old dam at its south end, and 110 feet at its north end. The old dam still remains, but is flooded and rendered useless by the new structure. The embankment on lot 5 was thereupon extended down the river by the United States to the new dam.

In January, 1881, the *Kaukauna Water-Power Company* commenced to build a canal on its land, with intent to cut the bank of the river on lots 5 and 6, and to draw water for hydraulic purposes from the pond raised by the dam in question. The plaintiff thereupon gave notice to that company, in writing, that it would resist the cutting of the embankment. The defendant company, however, proceeded with the canal, cut through the embankment on lots 5 and 6, but mostly on lot 6, and has since drawn, and still draws, water from such pond for the purpose of driving machinery located upon such canal. At the head of its canal the defendant company has erected and maintains a gate, which, when closed, stops the water as effectually as did the embankment which was cut through. By an act of Congress, approved March 3, 1875, the United States assumed the payment of compensation for flowage or injury to lands caused by the improvement, for which compensation was legally owing when the act was passed, and authorized proceedings in the courts of this state to ascertain the same.

The foregoing facts appear from the pleadings, testimony, and findings of the court. The circuit court dismissed the complaint, upon the merits, with costs. From the judgment in that behalf the plaintiff company appeals to this court.

*Moses Hooper* and *B. J. Stevens,* for the appellant, argued, among other things, that a riparian proprietor on a navi-

gable river has no right, as such, to water-power. He cannot build a dam to create such power without legislative grant. Such right is not mentioned by text writers as one of the riparian rights. Adjudications apparently recognizing it are invariably in cases where the right to create exists by virtue of the ownership of all lands affected, or may be acquired by making compensation under an enabling mill-dam act; and of these cases the greater part and weight of authority hold the right to be appurtenant to the dam and not to the bank. Sec. 1596, R. S.; *Smith v. Ford,* 48 Wis. 115, 164–168; *Lawson v. Mowry,* 52 id. 219, 234, 237; *Att'y Gen. v. Eau Claire,* 37 id. 400, 435; *Pennsylvania v. W. & B. Bridge Co.* 13 How. 518; Gould on Waters, 68, 75, 78, 227; *Smith v. Gould,* 59 Wis. 631, 642. The case of *Varick v. Smith,* 5 Paige, 137, and 9 id. 546, relied upon by the defendants, does not sustain their claim; but the language used by Chancellor WALWORTH in 5 Paige, 158, shows that the state might take to itself the hydraulic power created by dams built by it, and that no person could tap the ponds so made. It has been held that the state may take any public waters, and that the riparian proprietor has no property therein entitling him to compensation. Such rule has been adopted where the public water or stream was taken for the improvement of its navigation. *Cohn v. Wausau Boom Co.* 47 Wis. 314, 322; *Wis. R. Imp. Co. v. Lyons,* 30 id. 61, 65; *Stevens Point Boom Co. v. Reilly,* 46 id. 237; *Lansing v. Smith,* 8 Cow. 148–9; *Tinicum F. Co. v. Carter,* 61 Pa. St. 31; *Shrunk v. Schuylkill Nav. Co.* 14 Serg. & R. 71, 80, 81; *Comm. v. Fisher,* 1 Penn. 462, 467; *Holyoke W. P. Co. v. Conn. R. Co.* 20 Fed. Rep. 71, 78, 79. The same rule has been adopted where the public water or steam was taken for the improvement of another body or stream. *Black R. Imp. Co. v. La Crosse B. & T. Co.* 54 Wis. 679–686; *Rundle v. Delaware & R. C. Co.* 14 How. 80, 93, 94; *Transportation Co. v. Chicago,* 99 U. S. 635,

643–5; *Canal Appraisers v. People*, 17 Wend. 571, 616; *People v. Canal Appraisers*, 33 N. Y. 461; *McKeen v. Delaware D. Canal Co.* 49 Pa. St. 424, 434, 436, 440; *Monongahela Nav. Co. v. Coons*, 6 Watts & S. 101, 113–115; *Zimmerman v. Union Canal Co.* 1 id. 346, 352–3; *Comm'rs v. Withers*, 29 Miss. 21, 31–40. Also, where the public water or stream was taken for any other use by public authority. *Att'y Gen. v. Eau Claire*, 37 Wis. 400, 434–5; *State v. Eau Claire*, 40 id. 533, 542–3; *Fay v. S. & D. A. Co.* 111 Mass. 27, 28; *Lister v. Newark · P. R. Co.* 36 N. J. Eq. 477, 479; *Stevens v. P. & N. R. Co.* 34 N. J. Law, 532, 538–9; *Att'y Gen. v. Stevens*, 1 N. J. Eq. 369, 380; *Matthiessen & W. S. R. Co. v. Mayor*, 26 id. 247, 252–3; *Monongahela B. Co. v. Kirk*, 46 Pa. St. 112; *Atkinson v. Savage*, Hazard's Reg. 1834, cited in *Dover v. Portsmouth*, 17 N. H. 200, 226; *Bailey v. Phil., W. & B. R. Co.* 4 Harr. (Del.), 389, 395–6; *Green v. Swift*, 47 Cal. 536; *Barre v. Fleming*, 1 S. E. Rep. (W. Va.), 731; *Martin v. Waddell*, 16 Pet. 367; *Buccleuch v. Met. Board*, L. R. 5 Exch. 221; *King v. Smith*, Doug. 441.

If the riparian proprietor did have any property in the undeveloped water-power which he could not create, still the state could condemn it as incident to and parcel of the property rights to be condemned and taken for the purposes of navigation. Where the primary object of the exercise of the right of eminent domain is public, the fact that a private use, not alone justifying such exercise, is also subserved, does not invalidate the exercise of the right. *Att'y Gen. v. Eau Claire*, 37 Wis. 400, 435; *State v. Eau Claire*, 40 id. 533, 541–3; *Hubbard v. Toledo*, 21 Ohio St. 379; *Malone v. Toledo*, 34 id. 541; *Water Works Co. v. Burkhart*, 41 Ind. 364; *Cromie v. W. & E. Canal Co.* 71 id. 208, 211; *Wyoming Coal Co. v. Price*, 81 Pa. St. 156; *Dingley v. Boston*, 100 Mass. 544, 559; *Heyward v. Mayor*, 7 N. Y. 314, 325; *Rexford v. Knight*, 11 id. 308, 314; *Spaulding v. Lowell*, 23 Pick. 71, 80; *George v. School Dist.* 6 Met. 497,

510; *French v. Quincy*, 3 Allen, 9, 12, 13; *Raleigh & G. R. Co. v. Davis*, 2 Dev. & B. Law (N. C.), 451.

The change of forty feet in the dam landing, made in 1876, does not affect the question. The substance is, the right to maintain the dam as it has been maintained under the act of 1848 and subsequent legislation; not the precise point at which it may be maintained. *Stackpole v. Curtis*, 32 Me. 383, 386–7; *Davis v. Brigham*, 29 Me. 391, 402; *Carlisle v. Cooper*, 21 N. J. Eq. 576, 595; *Ogle v. Dill*, 55 Ind. 130. The right of the plaintiff was complete before the United States, by virtue of its sovereign power, changed the location of the dam.

*Alfred L. Cary* and *David S. Ordway*, for the respondents, as to the rights of riparian proprietors in the water flowing upon their lands, cited Gould on Waters, secs. 204–209; 3 Kent's Comm. 439; *Cary v. Daniels*, 8 Met. 466, 480; *Merrifield v. Worcester*, 100 Mass. 216, 219; *Tourtellot v. Phelps*, 4 Gray, 370, 376; *Pratt v. Lamson*, 2 Allen, 275, 284, 287; *Tyler v. Wilkinson*, 4 Mason, 400; Angell on Watercourses, secs. 90–97; *Black R. Imp. Co. v. La Crosse B. & T. Co.* 54 Wis. 659, 682.

The state could only appropriate so much of the water of Fox river as was necessary for the public use, the use of the surplus remaining in the riparian owners. The doctrine that private rights can only be invaded to the extent necessary for the public use is expressly recognized in *Stevens Point Boom Co. v. Reilly*, 46 Wis. 237, and *Cohn v. Wausau Boom Co.* 47 id. 314, 325. No question of private rights was involved in *Att'y Gen. v. Eau Claire*, 37 Wis. 400. Had there been, the language used in the opinion at pp. 435–6 would undoubtedly have been modified so as not to impair private rights. The water-powers reserved to the state by sec. 16 of the act of 1848 were only such as the state could lawfully take. They were such as were created by the artificial channels made in the course of the im-

provement, or as belonged to the land owned by the state bordering on the river, and none others. The preceding section 15 implies this. The construction of sec. 16 must be consistent with the constitutional powers of the state. See *Varick v. Smith*, 5 Paige, 138, and 9 id. 547; *Smith v. Rochester*, 92 N. Y. 464; *Gavit v. Chambers*, 3 Ohio, 496–498; *Lamb v. Rickets*, 11 id. 315; *Walker v. Board of Pub. Works*, 16 id. 544; *Hogg v. Beerman*, 41 Ohio St. 81; *Day v. Railroad Co.* 44 id. 406, 419.

The release by Hunt to the improvement company constitutes no bar to the right of the *Kaukauna Water-Power Company* to cut through the embankment on lots 6 and 7 with its canal, or to its drawing water from the river through said canal. That instrument, if it amounts to a grant, was only of the right to erect and maintain an embankment for the purpose of holding the water in the pond at its proper level for slack water navigation. It granted no fee interest in the land, and none of the water or riparian rights. It expressly reserved the right to use the embankment; and this use must be construed to be consistent and commensurate with the property rights retained. Hunt and his grantees could, therefore, for the purpose of enjoying their water rights belonging to these lots, cut through the embankment and draw water from the river so long as they substituted something in the canal which would keep up the water level in the pond as effectually as did the embankment.

The following opinion was filed December 13, 1887:

LYON, J. The controlling question in this case is, Has the defendant *The Kaukauna Water-Power Company* the right to cut the embankment on lots 5 and 6, on the south side of the river, and draw water from the pond made by the Kaukauna dam, for the purpose of propelling machinery located on its canal below the dam? The solution of this

question requires the determination of several other questions which will be stated and considered in their order.

1. The claim of the plaintiff corporation to all the surplus water-power created by the dam is based upon the proposition that sec. 16 of the act of the legislature, approved August 8, 1848, appropriates all such water-power to the state. This proposition is disputed on behalf of the defendants. Their counsel maintain that sec. 16 only gives the state such surplus water-power created by the improvement as may exist upon lands owned by the state, and that inasmuch as the state was not the owner of the lands upon which the Kaukauna dam was erected, the section does not apply to the surplus water-power thereby created. Their argument is, in substance, that, inasmuch as the first clause of the section only reserves to the state such land, waters, or materials appropriated by the board for the use of such improvements as belonged to the state, the last clause, which provides that water-power created by the improvement shall belong to the state must be held to apply only to such water-power as is made by dams erected on state lands. In other words, they seek to apply to this section the maxim *noscitur a sociis*. We cannot adopt this construction. The statute absolutely reserves to the state the property belonging to it mentioned in the first clause, and at the same time confers upon the state the water-power therein mentioned; that is to say, such water-power as should thereafter be created "by reason of any dam erected or other improvements made on any of said rivers" (including the Fox river), which otherwise did not belong to the state. This was necessary in order to give the state the absolute control of the improvement, and such is the plain reading of the statute. Sec. 16 will be found copied in the foregoing statement of the case.

It requires no argument to demonstrate that the water-powers reserved to the state by sec. 16 of the act of 1848

were granted to the Fox & Wisconsin Improvement Company, by ch. 98, Laws of 1853; that the same passed to the plaintiff by the purchase on the foreclosure of the trust deed and mortgage, and the conveyance thereof to it by the trustees and mortgagee therein; and that, in its conveyance to the United States, the plaintiff reserved to itself all of the surplus water-power created by the improvement.

We conclude, therefore, that whatever rights the state took to the Kaukauna water-power by the act of 1848 (which is the absolute ownership of the whole thereof, if that is a valid act), is vested in the plaintiff.

2. It is further maintained on behalf of the defendants that, conceding the Kaukauna water-power is within the provision of sec. 16 of the act of 1848, such act is invalid as to the surplus of the water-power over and above that required for the navigation of the river, for the reason that it is taking private property for private use, which is beyond the power of the legislature. Here, also, we are compelled to differ with the learned counsel for the defendants. It was necessary to erect the Kaukauna dam for the purpose of making the river at that point available for navigation. Without it slack-water navigation would have been impossible. It was of vital interest, therefore, to the state that it, or the corporation to which it entrusted the preservation and maintenance of the improvement, should have the entire and absolute control of the dam, embankments, canal, and all appliances necessary for the purposes of navigation, as well as of the waters in the pond created by the dam. It would be a serious detriment to the public interests were each riparian owner entitled to cut the dam, or the embankment which is a part thereof, and draw water from the pond. The exercise of such a right might, and probably would, seriously interfere with the proper management of the improvement, greatly to the detriment of the free and unrestricted navigation of the river. It was impossible to

make the improvement in a proper manner, and to meet the requirements of navigation, without creating some surplus water-power. But for the reasons above suggested such surplus was merely incidental to the improvement.

In *Attorney General v. Eau Claire*, 37 Wis. 400, and again in *State v. Eau Claire*, 40 Wis. 533, it was held that a statute which authorized the city of Eau Claire to erect a dam and raise the waters of the Chippewa river for the purpose of creating public water-works in said city, and which granted to the city the right to lease the surplus water-power created by such improvement, was a valid law. In the opinion of the court, prepared by RYAN, C. J., in each case, speaking of the power granted to the city to construct water-works, it is said: "That is so essentially a public and municipal purpose, that it is obvious that the city can take any legitimate power in aid of it. For that purpose the legislature could unquestionably grant, and the city take, power to construct and maintain a dam not obstructing the navigation of a public river or violating other right, public or private. And the dam so authorized might well produce an excess of power. *Superflua non nocent.* In such a case, as was frankly admitted on the argument, the surplus water need not run to waste. The legislature might well grant, and the city take, power to lease it. The power to construct and maintain the dam would still rest on the public, municipal use; not on the disposition of the accidental excess. *Spaulding v. Lowell*, 23 Pick. 71." Manifestly, the principle of that case is applicable here.

3. It is further claimed on behalf of the defendants that, by locating the south end of the dam upon lot 5, building an embankment thereon and on lots 6 and 7, and appropriating the whole water-power created by the dam, the state took the property of the owners of those lots, and that the laws of the state made no adequate provision for compensating them therefor. A riparian owner upon a navigable

stream has no right, without legislative consent, to build a dam across such stream for any purpose. *Wis. R. Imp. Co. v. Lyons*, 30 Wis. 61. He has the right, however, to pass from his land to the river, and from the river to his land, and to utilize the waters of the river upon his land for any purpose not interfering with the navigation of the stream or the rights of other riparian owners. That the construction of the Kaukauna dam and improvement by the state, and its appropriation of the water-power thereby created, take the property of the owner of lot 5, and deprive him of his riparian rights just mentioned (which are also property), does not seem to admit of doubt or controversy. Such owner has never been compensated for his property so taken; neither has he released his right thereto.

As to lots 6 and 7 we incline to the opinion that the instrument denominated a release, executed by Hunt to the Fox & Wisconsin Improvement Company in 1854 (Hunt being then the owner of those lots), in and by which he granted to that company and to its legal representatives "the right to erect and forever maintain an embankment of the dimensions as surveyed by the engineer of said company," operates as a surrender of all riparian rights appurtenant to such lots, not reserved in the instrument. The instrument recites a consideration of $100, and Hunt reserved therein "the right to use said embankment, when completed, but not so that the same shall be injured." He also reserved the right to excavate a ditch of certain dimensions on the land on the south side of the embankment. The embankment was surveyed and located along the margin of the river, and was so granted and erected for the purpose of confining the waters of the river within its natural banks, after it should be raised by the erection of the dam.

The act of 1848 is certainly liable to the criticism that it makes no adequate provision for compensating the owners of

property taken for the improvement.    True, it contains pro-
visions in sec. 17 (which section is copied in the statement of
the case), and in subsequent sections, for the condemnation
of private property to the use of the improvement.    Because
of these provisions, Dixon, C. J., in delivering the opinion
of the court in *Arimond v. G. B. & M. Canal Co.* (this
plaintiff) 31 Wis. 316, controverted a supposed statement of
the supreme court of the United States in *Pumpelly v. G. B.
Co.* 13 Wall. 166, to the effect that the laws of this state
failed to provide for making such compensation.    We all
overlooked the fact that the court in that case was deter-
mining the sufficiency of certain pleas, and only stated the
case made by such pleas.    It did not assume to say what
were the laws of this state on the subject.

    But the act of 1848 failed to give the land-owner the
right to institute condemnation proceedings under it to have
his compensation determined; and if the state should insti-
tute such proceedings, the compensation, when determined,
was, by sec. 21 of the act, made payable out of the fund
appropriated to such improvement.    By sec. 20 the record-
ing in the office of the register of deeds of a transcript of
the award signed by the appraisers and acknowledged or
proved as a conveyance of land, operated to vest in the state
the fee-simple of the premises condemned to the use of the
improvement.    This, without requiring the sum so awarded
as compensation to be first paid.    The history of the im-
provement during the time it was in the hands of the board
of public works and of the Fox & Wisconsin Improvement
Company, shows that the improvement fund was a very
uncertain source to rely upon for the payment of a debt
charged upon it.    No other provision was made in the act
of 1848, or in any other act of the legislature, for the con-
demnation of property to the use of the improvement, or
for payment therefor.    In view of these serious defects in
the law, and especially because the owner of the property

- taken for the purposes of the improvement was powerless to institute proceedings to have the compensation ascertained to which he was entitled, Mr. Justice ORTON said in *Sweaney v. U. S.* 62 Wis. 396, that, until the passage of the act of Congress of 1875, there was no provision of law for the ascertainment and payment of the damages and compensation for the taking of lands by flowage or otherwise for the use of the improvement. Looking to the practical operation of the statute, the statement thus made is substantially correct, although, perhaps, inaccurate in theory and form. But whatever defects inhered in the act of 1848, they ceased long since to be of any importance. That act was fully executed, the improvement which it authorized has been made and ever since maintained, and the title thereto, except to the incidental surplus water-power reserved by the plaintiff, has passed to the United States. The failure of the state legislature to provide adequate compensation for private property taken for, or injured by, the improvement, has been supplied by the act of Congress of 1875, in and by which an easy method is provided to ascertain the compensation to which the owner of such property is entitled, and the United States has assumed the payment thereof. *Jones v. U. S.* 48 Wis. 385, affirmed in 109 U. S. 513; *Sweaney v. U. S.* 62 Wis. 396.

4. A prescriptive right to maintain the south half of the dam on lot 5, founded upon twenty years' uninterrupted adverse user, is claimed on behalf of the plaintiff. Inasmuch as we are of the opinion that the United States has the legal right to maintain the dam on lot 5, without regard to any prescription, it is quite immaterial whether such claim is well founded or otherwise. It probably is not well founded as to the additional embankment constructed from the old to the new dam; perhaps not as to the portion of the new dam on lot 5, which includes all of the structure south of the center of the stream. But however the question of prescription should be decided were

it material, it seems quite clear that no statute of limitations has run against the right of the present owner of lot 5 to recover of the United States compensation for the portion of that lot taken for the improvement, and for the injury to the lot caused thereby. The act of Congress giving such compensation was approved March 3, 1875, and it provided for the payment of such claims legally owing at that date. The act, by its terms, provides for cases in which "compensation is now or shall become legally owing." Of course, it speaks from the date of its approval. The original Kaukauna dam was not erected on lot 5 until after March 3, 1855. This satisfactorily appears by the testimony of Hon. Morgan L. Martin, who erected the dam. He testified, in substance, that he entered upon the bed of the stream for the construction of the dam after warm weather commenced in the spring of 1855. Of course, in the latitude of Kaukauna, that must have been later than March 3d. We suppose the right to compensation was not cut off until a prescriptive right to maintain the dam had matured by twenty years' adverse user. Hence, when the act of March 3, 1875, was passed, compensation was owing to the owner of lot 5 for the taking of and injury to his property, which is still a valid claim against the United States. And this, we think, includes any deprivation or interruption of any legal riparian right. On this subject, generally, see the cases of *Jones v. U. S.*, and *Sweaney v. U. S.*, above cited.

5. It follows, we think, from the views above expressed that neither of the defendants had any right whatever to draw water from the pond in question, and that the plaintiff is the legal owner of the water-power created by such dam over and above what is required for navigation. The plaintiff was therefore entitled to an injunction restraining the defendants from drawing the water from the pond for the purposes aforesaid.

6. A mandatory injunction, requiring the water-power

company to restore the embankment, or at least to allow it to be done, is also prayed. The dam and embankment belong to the United States. The plaintiff has no legal interest therein, no duty in respect to it, and no right to interfere with it unless by permission of the government. It is only interested in the surplus water-power created by the government works, and maintained at such height as the government chooses to maintain it. The government may lower the dam and embankment, or may remove the same and destroy the water-power entirely, and the plaintiff cannot prevent it. The government may also use such appliances as it chooses to keep up a head of water. It may retain the embankment on lots 5, 6, and 7, or use some other means of holding the water, and the plaintiff is in no position to object. Hence it is entirely a question between the United States and *The Kaukauna Water-Power Company* whether such embankment shall be restored where the company cut through it, or whether the head gates of the canal, which, when closed, stop the water as effectually as did the embankment, shall be allowed to remain in place of the embankment. The plaintiff has no voice in the determination of that question. Hence the prayer for a mandatory injunction compelling the water-power company to restore the embankment, or to allow the plaintiff to do so, must be denied.

We do not here determine the relative rights of the plaintiff and other riparian owners below the dam, in respect to the use of the water which would run over the dam if not taken from the pond into the canal; nor do we consider whether there is any restriction upon the manner or place in which the water shall be returned to the river below the dam. We only hold that the plaintiff owns the surplus water-power created by the dam, and that the defendants have no legal right, without the consent of the

plaintiff, to draw water from the pond with which to propel machinery.

We have been greatly aided in our investigation of the case by the very able arguments of the respective counsel, which furnish evidence of great learning and research. The case is a very important one, and any judgment finally entered in it may, probably will, be far-reaching in its effect upon water-rights on the Fox river. The writer ventures to express the opinion that there are federal questions involved in it which will support an appeal to the supreme court of the United States, and the desire that such an appeal may be taken, to the end that the relative rights of the plaintiff and other claimants to water-power created by the improvement of the Fox river, now owned by the United States, may be finally determined by that tribunal.

*By the Court.*— The judgment of the circuit court is reversed, and the cause will be remanded with directions to that court to give judgment for the plaintiff as indicated in this opinion.

The following opinion was filed February 28, 1888:

LYON, J.   Each party has moved for a rehearing of the cause.   We do not care to discuss the case further on the defendants' motion, as we find nothing in the argument in support of it which leads us to distrust the accuracy of the judgment hereinbefore announced.

The plaintiff's motion is not for the purpose of changing the judgment, but to procure a modification of what is said in the opinion respecting the relative rights of the plaintiff and the United States in the improvements which create the water-power in controversy.   What was there said on that subject seemed to be called for by the prayer for a mandatory injunction contained in the complaint.   It was certainly pertinent to that branch of the case, and hence not

*obiter dictum.* Yet it was not absolutely essential to a determination of the right to such injunction. The refusal of such injunction may as well be rested in the discretionary power of the court in that behalf. Inasmuch as the head gates to the defendants' canal stop the water as effectually as would an embankment of earth, and the plaintiff is not injured by leaving the gates as they are, a refusal of the injunction prayed is a very proper exercise of the discretion of the court. Because the United States is not a party to this litigation, and because the question of its rights in the works of the improvement, as affecting the plaintiff, has not been fully argued, we are constrained to so far modify the former opinion as to leave the question of the relative rights of the plaintiff and the United States in and to the dams and other works pertaining to the Fox river improvement open and undetermined. A rehearing is unnecessary.

*By the Court.*— Each motion is denied, with $25 costs.