## EDWARDS ET AL. v. CITY OF CHEYENNE ET AL.
### (No. 623.)

EMINENT DOMAIN—MUNICIPAL CORPORATIONS—TAKING LAND FOR-
WATERWORKS—STATUTES—APPLICABILITY TO MUNICIPAL CORPORA-
TIONS—ADOPTION OF STATUTES BY REFERENCE—STATUTORY CON-
STRUCTION—GENERAL LAWS—CONDEMNATION PROCEEDINGS—DUE
PROCESS OF LAW—RIGHT TO JURY TRIAL—RIGHT OF APPEAL—COL-
LATERAL ATTACK—EQUITABLE RELIEF BY LAND OWNER—NECESSARY
ALLEGATIONS—MEASURE OF COMPENSATION IN CONDEMNATION
PROCEEDINGS—APPRAISERS—IRREGULARITIES IN CONDEMNATION PRO-
CEEDINGS—EFFECT OF—COLLATERAL SUIT—PLEADINGS—CONCLUSIONS
OF LAW—DEMURRER—MUNICIPAL PROPERTY—WHEN MAY BE DE-
VOTED TO OTHER THAN ORIGINAL PURPOSE—EMINENT DOMAIN—
NECESSITY FOR TAKING PROPERTY—HOW AND WHEN DETERMINED.

1. Section 2915, R. S. 1899, which authorizes any incorporated
city or town to acquire by condemnation any land or
right of way required for water works purposes, and was
enacted in 1882 as a part of an act entitled "An act to
enable the City of Cheyenne to provide a water supply
for the inhabitants thereof, to extinguish fires, and for
other purposes," when the only municipal corporations in
Wyoming were those created by special charter, and when
also local or special legislation amending such charters was
permissible, was clearly intended to apply to Cheyenne,
and conferred upon that city the powers mentioned in the
section.

2. A general law may be applicable to a city or town existing
under a special charter previously and lawfully granted,
the language of the act being sufficient to include such a
city or town, without violating a constitutional provision
prohibiting the amendment of charters by local or special
act.

3. A statute conferring power upon a municipal corporation to
acquire land by condemnation to enable the municipality
to procure an adequate supply of water is entitled to a
liberal interpretation to carry out the evident legislative
purpose, since the object is one of great public utility.

4. The language of section 2915, R. S. 1899, describing the
property authorized to be acquired by a municipality
through condemnation proceedings for water works pur-
poses, is sufficiently broad, unless restricted by construc-
tion, to cover land outside the corporate limits; and,

since it is ordinarily necessary for a municipality to go beyond its corporate limits to procure an adequate and proper supply of water, it is reasonable to suppose that the legislature intended to provide for such well known necessity by the use of the comprehensive language employed in the section; and there being other provisions in the act of which it was a part recognizing the probability that a part of the water works would be located outside the corporate limits, and the City of Cheyenne being authorized by its charter to pass rules and ordinances for the protection of lands and ditches used for water purposes outside of the city limits; it is proper to hold, and it is held, that by section 2915, authority was conferred upon said city to exercise the power of eminent domain for the purposes therein mentioned whether the land required be within or without the corporate limits.

5.  Section 2915, R. S. 1899, when enacted in 1882, authorized any incorporated city or town to acquire land by condemnation for water works purposes, in the manner provided by section 45 of an act approved December 10, 1869, entitled "An act to create and regulate corporations," (which became sec. 3084, R. S. 1899) and declared that said section shall be construed to be as applicable to such city or town "as it is now applicable to road, railroad, ditch or telegraph companies named therein." *Held*, that the provisions of the statute so referred to were thereby adopted as a part of the section with the same effect as if they had been incorporated bodily therein.

6.  The act of 1890 (Ch. 52) and the Act of 1891 (Laws 1890-91, Ch. 27) conferring power upon incorporated cities and towns to construct, extend, maintain and regulate, &c., a system of water works, and to purchase and condemn property required therefor, were general laws and applicable as such to the City of Cheyenne; and each act conferred power upon that city to condemn lands and other property, whether within or beyond its corporate limits, necessary for the construction and maintenance by the city of a system of water works.

7.  The tribunals referred to in sections 1 and 28 of article 5 of the constitution as courts of arbitration or compulsory boards of arbitration are those provided in one of the miscellaneous sections of the constitution, which requires the legislature to establish courts of arbitration to hear and determine all differences and controversies between organizations or associations of laborers and their employ-

ers, submitted to them in such manner as may be provided by the legislature; and the persons appointed under section 3084, R. S. 1899, as appraisers to ascertain the damages to be paid to landowners in condemnation proceedings do not constitute a court or compulsory board of arbitration within the meaning of either section 1 or 28 of article 5 of the constitution.

8. Section 3084, R. S. 1899, which provides a procedure for acquiring land through the exercise of the power of eminent domain, does not authorize the taking of private property for public use without due process of law, and is not invalid on the ground that it violates constitutional provisions in that respect, for it requires the petition to be presented to the district judge, who is. required, before acting, to have satisfactory evidence that notice of the application, and the time and place thereof, has been given at least 10 days previously to the land owners personally at their residence or on the premises, or by publication; the court or judge is authorized to adjourn the proceedings from time to time, and require further notice to be given that may seem proper to have proofs and allegations of all parties interested touching the regularity of the proceedings, and, by an entry in its minutes, appoint three disinterested appraisers, specifying a time and place for their first meeting; the appraisers are required to take an oath to faithfully perform their duties, and authorized to issue subpoenas for and administer oaths to witnesses, to adjourn and hold meetings for that purpose giving reasonable previous notice to the owners or parties interested, and are required to hear the proofs and allegations of the parties; upon their certificate of appraisement to be filed with the register of deeds, and due proof of the payment or deposit of the compensation allowed, the judge is required to have entered in the minutes a rule describing the lands, the compensation and the method of ascertaining it, and the payment or deposit of the compensation, a certified copy of which rule is required to be recorded and indexed in the office of the register of deeds in like manner and with the same effect as a deed of conveyance. The section provides for reasonable notice to the property owner and ample opportunity for him to be heard at each stage of the proceeding and also for the payment of just compensation to be ascertained by an impartial tribunal.

9. The proceedings to condemn land under the power of eminent domain is not a civil action, nor is it necessary that

it should be considered in the ordinary course of legal proceedings. The appointment of appraisers may be confided to any fair tribunal, board, or officer, and still be due process of law, provided the landowner shall have notice and an opportunity to be heard.

10. A general expression in a constitution that the right to trial by jury shall remain inviolate does not apply to or affect a proceeding to condemn property under the power of eminent domain.

11. In the absence of an express provision in the constitution granting it, a jury trial is not a constitutional right in a proceeding to condemn property under the power of eminent domain.

12. A provision for appeal is not essential to the validity of a condemnation statute or proceeding unless required by the constitution.

13. The words "court" and "judge" or "district judge" are used in section 3084, R. S. 1899 interchangeably as indicating the same thing, the order appointing the appraisers is required to be entered "in the minutes," and the concluding order is also to be entered "in the minutes," which can only mean the minutes of the. court, while the deposit of the compensation money may be made in the county treasury or other place "approved by the court," and the "court" may appoint another appraiser in case one previously appointed dies or fails to serve; and, therefore, there is no ground for holding that the condemnation proceeding provided for is before the judge rather than the court, even if that would constitute a valid objection to the statute.

14. In a condemnation proceeding under section 3084, R. S. 1899, the property owner may interpose any objections or exceptions that would be proper in such a proceeding, although the statute does not so expressly provide, for the silence of the statute in that particular could not be held to amount to a denial of the right of the owner to file counter pleadings or motions contesting the petitioner's right or stating objections at any stage of the proceedings.

15. Where a city is in possession of land, claiming to have acquired it by condemnation, and an action is brought to enjoin the city from claiming such title and from further trespassing upon the property, to quiet the title of plaintiffs as the owners thereof, and to have the condemnation proceeding declared void, on the ground of the alleged invalidity of such condemnation proceeding, such action

is a collateral attack upon the proceeding which was brought by the city to condemn the land; and it must be presumed in such action that the court before which the condemnation proceeding was brought followed the proper procedure, unless the contrary appears.

16. Where the statute prescribed a form of procedure for condemning land by railroad companies, and a slightly different form of procedure for condemning land by other corporations, the principal points of difference between the two consisting of provisions for a trial by jury upon the filing of objections to the report of the commissioners, and for an appeal, in the procedure to be followed by railroad companies, and it was claimed that a city could condemn land only in the method provided for railroad companies, and it was sought to avoid a proceeding brought by a city under which it was claiming title to certain land adversely to plaintiffs, because conducted under the other statute. *Held,* that in the absence of a sufficient showing that the proceedings complained of were so conducted as to be sustainable only, if at all, upon the provisions of the statute deemed by plaintiffs to have been inapplicable to the city, there is no necessity for deciding whether such statute applied or not.

17. In an action to enjoin a city from claiming title to and holding possession of certain land on the ground of the alleged invalidity of a proceeding to condemn the same, an averment in the petition that the defendant city claims title to the land under a rule made as provided in section 3084, R. S. 1899, in certain proceedings instituted under and by virtue of section 2915, if not a mere conclusion of law, is at least too indefinite and uncertain upon which to base a decree adjudging the condemnation proceedings to be void, or a right to equitable relief on the ground of their alleged invalidity. Likewise, an averment that the city is claiming the land by virtue of said proceedings and the deposit of the amount of the assessed compensation in the office of the county treasurer in the manner and as provided in sections 2915 and 3084. And, since the same order vesting title in the condemning party is provided for both in the statute alleged to have been inapplicable and in the statute which it is alleged should have been followed, and upon the same conditions, except that under one statute there may be a jury trial, and it is not shown whether there was or was not a jury trial, or whether or not one was demanded or denied; and both

statutes provided for the deposit of the assessed compensation with the county treasurer to the credit of the persons entitled thereto; *Held,* that the averments aforesaid are to be regarded as mere conclusions of law, unsupported by any fact alleged, and therefore not admitted by demurrer.

18. A court of equity may in a proper case enjoin the enforcement of a judgment which is absolutely void.

19. A court of equity may enjoin an entry upon private property under color of the power of eminent domain until the right to make such entry has been perfected by a full compliance with the constitution and the laws, when such compliance is lacking either through failure to pay, tender or deposit of compensation as required by law, or through invalidity of the condemnation proceedings or the condemnation statute.

20. Mere irregularities or errors in the proceedings leading up to a judgment constitute no ground for equitable interference unless the result of fraud or collusion, or of such a nature as to deprive a party of all opportunity to defend in the action at law.

21. Relief in equity against condemnation proceedings will be denied where the right to relief is based upon mere irregularities not rendering the proceedings invalid. A clear right to relief in any case must be' shown, and where a land owner has appeared in the condemnation proceedings, he cannot afterwards enjoin an entry upon the premises on grounds which might have been litigated in such proceedings.

22. Where the proper tribunal has acquired jurisdiction in condemnation proceedings, they cannot be avoided collaterally for mere irregularities or errors, and objections which were available in the proceedings cannot be raised by those who were parties thereto in any collateral suit.

23. The proper time to object to appraisers appointed in a condemnation proceeding, on the ground of their personal interest, is when the appointment is made, and the failure to make the objection at the proper time amounts to a waiver of any disqualification then known to the objecting party, so that the question cannot be raised in an action afterwards brought to have the proceedings declared void, and to enjoin the condemning party from entering upon or continuing to occupy the property.

24. Market value is what fixes the amount of compensation to be paid a landowner in condemnation proceedings, in as-

certaining which, it is proper to consider the adaptability of the land to a particular purpose, and in that connection the probable demand for property so situated for that purpose should also be considered, especially if the purpose be an unusual one; that is, such a demand as would affect the value of the property. The question is not what the value of the land may be for a particular purpose, but what is the market value, considering all the purposes for which it may be adapted.

25. Uses which are so remote and speculative as to add nothing to the market value at the time are not entitled to consideration in determining the market value of land for the purpose of awarding just compensation for land taken under the power of eminent domain.

26. Inadequacy of the compensation awarded in condemnation proceedings by the tribunal selected as provided by law is not alone a ground for avoiding such proceedings in a collateral suit.

27. The adequacy of the compensation awarded in condemnation proceedings can be questioned on the ground that the appraisers were influenced by passion and prejudice only in the condemnation proceedings at the proper time and in the proper manner and not in a subsequent collateral suit brought to have such proceedings declared void.

28. Where the appraisers appointed to assess the compensation to be paid for property taken in condemnation proceedings have excluded admissible evidence relating to the market value of the property, or adopted an erroneous measure of compensation, exceptions thereto may be presented at the proper time to the court wherein the proceedings are pending; but the error of the appraisers in that respect, if any, is not reviewable in an action subsequently brought to have the condemnation proceedings declared void, and to enjoin the condemning party from occupying or claiming title to the premises by virtue of such proceedings.

29. A city claimed to have acquired by condemnation certain land to be used as a site for a dam and reservoir in connection with and as a part of its system of municipal water works; and, in a suit brought to have the condemnation proceedings declared void and the city enjoined from claiming title to the land or occupying the same by virtue of such proceedings, the petition alleged that the sum of $2,200 awarded the plaintiffs as owner of the land by the appraisers was inadequate, and was the result of passion and prejudice on the part of the appraisers; that the land

is underlaid with rich and vast deposits of gold, silver, and copper ore of high grade, and of the fair and reasonable value of $50,000; that as a site for a dam and reservoir to accumulate and store water for power and irrigating purposes the land was of the fair and reasonable value of $25,000; that the water rights attached to the land for its reclamation and irrigation were of the fair and reasonable value of $3,000; that for agricultural purposes alone the land was of the fair and reasonable value of $8,000; and that the appraisers well knew of such deposits, ore, water rights, and the value of the land as a site for a dam and reservoir, but failed and refused to consider the same as elements of value. *Held,* (1) That said specific allegations of value were insufficient to support the general charge that the appraisers were influenced by passion and prejudice, as against a demurrer to the petition. (2) The fact that the city desired the land for the purpose of erecting a dam thereon would not affect its market value, but it should be shown that its suitability as a site for a dam was such as to enhance its market value, by reason of the demand for such sites in that particular locality. (3) That the general allegation that the land was underlaid with valuable mineral ores was insufficient, unaided by any allegation showing what had been done toward prospecting or developing the alleged mineral resources of the land, or whether it adjoined or was in the neighborhood of a mine or mines producing such minerals, or what the transportation facilities were, since the averment, standing alone, does not show anything more than a speculative value on account of the alleged presence of mineral ores. (4) That it was not the duty of the appraisers to fix a value upon the water rights attached to the land separately, but to ascertain the market value of the land with all appurtenances, including the water rights, if the land was so taken as to include or injuriously affect them. (5) That the demurrer did not admit the value of the land to have been $86,000, the sum of the alleged values for the several specific purposes, for some of such purposes might be incompatible, so that if the land was applied to one its use would be necessarily prevented for one or all the other purposes; and that, from the form and manner in which such values are alleged, they may be remote and speculative and therefore incompetent as elements affecting market value. (6) Intending to show that the award was unjust and determined upon erroneous principles, it was incumbent upon the

plaintiffs to make that fact clearly to appear by the petition to constitute gorund for equitable relief.

30. For the purpose of showing the invalidity of a certain condemnation proceeding through which the defendant city claimed to have acquired the land in controversy as a site for a dam and reservoir in connection with its system of municipal waterworks, it was alleged in the petition that the proceeding was instituted by the City, and the land was desired for the unauthorized and *ultra vires* purpose of enabling said City to supply water to the inhabitants of, and live stock, residing in and kept at, a certain military brigade post of the United States situated outside the corporate limits of said City, and under and by virtue of an *ultra vires* and unlawful contract so to do made between the City and the United States government; and that said proceedings were therefore brought in bad faith and not for any purpose authorized by law. *Held,* that such allegations are mere conclusions of law, and not sufficient to put the matter in issue without the facts upon which such conclusions are based.

31. A city may have an abundant supply of water with inadequate or inconvenient means for distributing the same, or rendering it available for all the purposes for which a system of waterworks may lawfully be constructed and maintained; and it may lawfully construct a larger plant than present necessities may require, in order to amply provide for seasons of drouth and for reasonably anticipated demands in view of the prospective growth of the city.

32. The necessity for making any proposed work or improvement for which property may be taken under the power of eminent domain is purely a legislative question, and where there is no constitutional or statutory provision to the contrary, whether proposed municipal water works are demanded by the lawful needs of the municipality, and when, where, and in what manner they shall be constructed are matters resting exclusively with the municipal authorities, under the power conferred by law.

33. The question of necessity for taking particular land for a public use was involved in the condemnation proceedings brought for the purpose of acquiring such land, and the landowner is concluded thereby from raising the question in a collateral suit, except upon some ground available in equity to avoid a judgment regularly entered.

34. An averment in a petition in a suit to avoid condemnation proceedings that the city instituting such proceedings for

the purpose of acquiring land for a site for a dam and reservoir as a part of its system of waterworks is abundantly supplied with water and water storage facilities for all lawful purposes is not alone sufficient upon which to predicate a charge of bad faith on the part of the City; and an averment that the real purpose was to comply with a contract made by the city to supply water to a military post outside the city limits is also insufficient because indefinite and uncertain, since no facts or particulars concerning the terms of the contract are alleged.

35.  A municipality may devote to other purposes that portion of its public property not required for public use without interfering with the public character of the property, or the right to acquire it, where the original purpose is that which the law authorizes.

36.  Municipal action authorizing or directing the taking of necessary land by condemnation for waterworks purposes not being required by statute to be expressed by ordinance, the council may act in that respect in any formal manner adequate for the purpose, as by resolution.

37.  A condemnation petition presented by a city is not required to state that the city had judicially determined or passed upon the necessity of taking and condemning the land sought to be taken; though it should, perhaps, be shown upon the hearing that the proper action had been taken by the corporate authorities.

38.  The petition that was filed in a condemnation proceeding is not before the court in an action brought to have such proceeding declared void and to enjoin the party claiming thereunder from occupying the land, and neither its sufficiency nor the sufficiency of the evidence upon the hearing of such condemnation proceeding are to be considered.

[Decided April 3, 1911.]                    (114 Pac. 677.)
[Rehearing denied April 13, 1912.]          (122 Pac. 900.)

ERROR to the District Court, Laramie County; HON. CARROL H. PARMELEE, Judge.

The material facts are stated in the opinion.

*Kinkead & Mentzer,* for plaintiffs in error.

A party who stands upon a general demurrer admits all the material facts well pleaded. (State v. Irvine, 14 Wyo. 318; Spaulding v. Douglas, (Neb.) 122 N. W. 889; State

v. Grant, 12 Wyo. 1.)   If sufficient facts are set out in the petition to constitute a cause of action upon which the plaintiff would be entitled to any relief the sustaining of a demurrer thereto is error.   (Summers v. Ins. Co., 12 Wyo. 381.)   A petition in an action to quiet title which alleges possession in the plaintiff under a claim of title in fee and that defendant claims an estate or interest adverse to plaintiffs is good as against a demurrer.   (R. S. sec. 4104;  Durell v. Abbott, 6 Wyo. 262.)   A day in court is a matter of right in judicial proceedings, but administrative proceedings rest upon different principles.   The party affected by them, however, may test their validity by a suit instituted for that purpose.   (Weimer v. Dunbury, 30 Mich. 200.)   The finding of an administrative officer on a question of law is not conclusive upon the courts, and an action will lie by injunction or otherwise by a party thereby aggrieved.   (Am. &c. v. McAnnulty (U. S.) 47 L. Ed. 90.) Property sought to be condemned by a city must be necessary for the purposes of the city.   (Pocanto v. Bird, (N. Y.) 29 N. E. 246;  People v. Humphrey, 23 Mich. 471.) A proceeding instituted to condemn property for both public and private uses indiscriminately cannot be sustained. (107 N. W. 405;  Ry. Co. v. Galt, (Ill.) 23 N. E. 425, 24 N. E. 674;  Gaylord v. Goodlet, (Tenn.) 24 Am. Dec. 546.) All conditions of an eminent domain statute must be complied with, and when a municipality seeks to condemn land the municipal records must show due adoption of all necessary resolutions.   (*In re* Street, 109, N. Y. S. 950;  Ry. Co. v. Macloon, (Wis.) 116 N. W. 897;  *In re* Ry. Co. (Wis.) 116 N. W. 841;  Post v. Ry. Co. (Vt.) 69 Atl. 156.)   Every reasonable doubt as to the authority to condemn must be resolved in favor of the land owner.   (97 Minn. 420.)   The charter of a city is a public law of which the courts take judicial notice.   (Naylor v. McCullough, (Ore.) 103 Pac. 204.)   If the steps required to be taken by a city for the condemnation of property are not taken the city cannot exercise the authority.   It was necessary for the defendant city to pass an ordinance for the taking of the property of

plaintiffs to render the condemnation proceeding valid. (City v. Wooton, 28 Ia. 571; State v. Burlington, 45 Ia. 87; Dillon Mun. Corp. secs. 610, 643, 245; Roche v. Dubuque, 42 Ia. 254; Kendig v. Knight, 60 Ia. 32; Tallent v. Burlington, 39 Ia. 546; Zalesky v. Cedar Rapids, 118 Ia. 714; Ottumwa v. Chinn, 75 Ia. 405; Rochester v. Bloss, (N. Y.) 77 N. E. 794; Rochester v. Gleichauf, 82 N. Y. Supp. 750.) Municipal corporations can exercise only the authority granted by their charter, or legislative acts creating them, or necessarily implied in such grant or incident thereto; and reasonable doubts about the existence of authority are to be resolved against the corporation. (Brockman v. Creston, 79 Ia. 587; Hanger v. Des Moines, 52 Ia. 193; Bicker v. Water Works, 79 Ia. 419; Merriam v. Woody, 25 Ia. 163; Clark v. Des Moines, 19 Ia. 199; Aldrich v. Pain, 106 Ia. 461; Cherokee v. Perkin, 118 Ia. 405; Water Co. v. Cedar Rapids, 118 Ia. 234; Schneider v. Rochester, 160 N. Y. 165; Rochester v. Bloss, 185 N. Y. 42.) The municipal corporation must show that it has complied with the statutory or charter requirement of a resolution or a formal ordinance. (15 Cyc. 827, Whitehead v. Denver, (Colo.) 56 Pac. 913; In re Buffalo, 78 N. Y. 362; St. Louis v. Franks, 78 Mo. 41.) Every essential prerequisite to jurisdiction in condemnation proceedings must be strictly complied with, and this must affirmatively appear on the face of the proceedings to give them validity. (15 Cyc. 812; Crandall v. Ry. Co., (Ia.) 103 N. W. 778; Ry. Co. v. Reed, 52 Ind. 357; Derby v. Ry. Co., 119 Mass. 516; Binney v. Canal Co., (U. S.) 8 L. Ed. 917; Sevennes v. Village, (Wis.) 91 N. W. 121; N. P. & Co. v. Portland, (Ore.) 13 Pac. 705.)

Section 2915, R. S. 1899, is inapplicable to special charter cities and any proceeding brought thereunder by the City of Cheyenne is absolutely void. The four classes of cities and towns authorized by the constitution to be incorporated under a general law were not intended to include special charter cities theretofore organized. The power to condemn private property should be strictly construed and the pre-

scribed mode for its exercise strictly followed. (Schneider v. Rochester, 160 N. Y. 165; *In re* Buffalo, *supra;* Lewis Em. Dom., secs. 254, 341; Cooley's Const. Lim. (6th Ed.) 241, 648; Adams v. Ry Co., 10 N. Y. 81; People v. Kniskern, 54 N. Y. 52; Ry. Co. v. South, (Ohio) 84 N. E. 418; Minturn v. Larue, 23 How. (U. S.) 435; Bloom v. Xenia, 32 O. St. 118.) If it is doubtful whether the statute confers the authority to condemn, the doubt must be resolved against the petitioner. (107 N. W. 407; Ry. Co. v. Fairibault, 23 Minn. 67; Fletcher v. Ry. Co., (Minn.) 68 N. W. 1085; Telephone Co. v. Ry. Co., 120 Fed. 363; Holyoke Co. v. Lyman, 15 Wall. 500; New Jersey Co. v. Morris Co., (N. J.) 1 L. R. A. 133.)

The scheme laid down in section 2915 for condemnation of land contemplates a compulsory board of arbitration within the meaning of section 28 of Article 5 of the Constitution, and no right of appeal having been provided by statutes, the same is null and void as in violation of said constitutional provision. (Memphis v. Burlington, (Ala.) 18 L. R. A. 166; Ry. Co. v. County, 27 Ill. 50; Flanary v. Kane, (Va.) 46 S. E. 312; Odel v. Wharton, (Tex.) 27 S. W. 123.)

The functions of a board of appraisers provided for in section 2915 are judicial in their nature, and the statute therefore violates sections 1 and 10 of Article 5 of the Constitution of the State. (Rev. Stat. 1899, sec. 3084.) If the functions of said appraisers are not judicial but administrative, ministerial or *quasi* judicial only, then section 2915 violates Article 2 of the Constitution, in that legislative and administrative duties are imposed upon the district judge in the matter of the appointment of appraisers. The power of appointment is necessarily executive and cannot be exercised by the judiciary, except for the appointment of subordinate officers and employees immediately connected with the court and such as are needed to aid it in the proper administration of its functions. A sovereign power conferred upon any one branch or department of government cannot be delegated by that branch to any other. (State v.

Young; 100 Minn. 499; *In re* Supervisors, 114 Mass. 247; County v. Mitchell, 97 Md. 330; State v. Barker, 116 Ia. 96; Beasley v. Ridout, 94 Md. 641; Houseman v. Montgomery, 58 Mich. 364; *In re* Weston, 28 Mont. 207; State v. Towns, 153 Mo. 91; State v. Mayor, 103 Ia. 76; Cooley on Tax., 2nd Ed., 61, 65.)

The condemnation procedure. provided for in sections 2915 and 3084 does not constitute due process of law and is therefore void.  (Wyo. Const., Art. 1, sec. 6; U. S. Const., 14th Amendment, sec. 1). The best that a court can do is to say in each case as it arises whether a particular act or provision is due process of law.  (3 Words & Phr. 2227; 43 L. R. A. 727; 70 N. Y. Supp. 1050; 74 N. Y. 183; 9 L. R. A. 152; 46 N. W. 315; 15 Fla. 410; 76 Ala. 603.) An act which the legislature may think proper to pass in the uncontrolled exercise of its power is in no sense due process of law required by our Constitution.  (12 N. Y. 202; 45 N. Y. 356; Davidson v. Board, 86 U. S. 104; Parks v. Board, 61 Fed. 436; State v. Mayor, 703 Ia. 86; Ry. Co. v. Minn., 134 U. S. 457; Kilburn v. Thompson, 103 U. S. 168.)

So far as section 2915 and 3084 affect or attempt to enlarge upon the authority of cities and towns in the matter of condemnation for water works purposes they were repealed by Chapter 27 of the Laws of 1890-91, and by previous legislation of the Territory.  (Const., Art. 21, sec. 3; Rev. Stat. 1899, sec. 1704, 1713.)  Without express words of repeal a previous statute will be held to be modified by a subsequent one, if the latter was plainly intended to cover the whole subject embraced by both and to prescribe the only rules to govern the subject.  (Tracy v. Tuffly, 134 U. S. 206; Institute v. City, (N. Y.) 75 N. E. 1119; Murdock v. Memphis, 87 U. S. 590; Ry. Co. v. Newcastle, (Ind.) 87 N. E. 1067.)  While repeals by implication are not favored, it is well settled that where two acts are not in all respects repugnant, if the latter act covers the whole subject of the earlier one and embraces new provisions plainly showing that it was intended as a substitute

for the first, it will operate as a repeal. (King v. Connell, 106 U. S. 395; U. S. v. Tynen, 11 Wall. 88; Brome v. County, 31 Neb. 362; State v. Elevator Co., (Neb.) 106 N. W. 979; Nichol v. St. Paul, 80 Minn. 415; Sutherland Stat. Const. sec. 154; Clark v. Baxter, (Minn.) 108 N. W. 838; Finding v. Foster, (Ind.) 84 N. E. 529; Thomas v. Butler, 139 Ind. 245;. Hadley v. Musselman, 104 Ind. 459; 26 Ency. L. 731-735; Lewis' Sutherland Stat. Const. secs. 269, 271; *In re* Press Co., (N. Y.) 79 N. E. 1006; Freeman v. People, (Ill.) 89 N. E. 667; Allen v. People, 84 Ill. 502.)

The amount allowed by the appraisers did not constitute just compensation. A judgment by a state court, even if authorized by statute, whereby private property is taken for public use without just compensation, is not due process of law under the 14th amendment of the United States Constitution. (Ry. Co. v. Chicago, 166 U. S. 241.) The question of compensation is judicial, not legislative. (Newport Co. v. City, 103 Fed. 586.) Nothing can be fairly termed compensation which does not put the party injured in as good condition as he would have been in if the lands had not been taken. (Ry. Co. v. Husil, 43 Mich. 398.) The failure of the appraisers to consider the value of the minerals underlying the land, its value as a site for a dam, and the value of the water rights, deprived the owners of fair compensation. (Ry. Co. v. Chesbro, 74 Mich. 466.) Due process of law is not always satisfied by the mere form of the procedure, the fact of notice and the right to be heard. (Ry. Co. v. Chicago, 166 U. S. 226.)

Sections 2915 and 3084 are unconstitutional and void in that the plaintiffs were compelled thereby to submit their property rights and the question of the right of the City to condemn the land, as well as the jurisdictional facts, to the individual holding the office of district judge and not to a court. (Const. Art. 5, sec 10.) The term "court" will not admit of a meaning synonomous with "judge," and it was not intended that the statute should admit of such construction. The words "court" and "judge" seem to be

here employed with the peculiar significance which ordinarily attaches to each term distinctively. (Gruner v. Moors, 6 Colo. 526.) While the judge is often called the "court" yet he is rightly so called only when the tribunal over which he presides is in session. A time, a place where, and the persons by whom judicial functions are to be exercised, are essential to complete the idea of a court. (State v. Woodson, 161 Mo. 444; McClure v. McClurg, 53 Mo. 173; People v. Barratt, 9 N. Y. Sup. 321; Dunn v. State, 2 Ark. 229; Loree v. Abner, 57 Fed. 159; Whie Co. v. Gwin, (Ind.) 26 N. E. 237; Shoultz v. McPheters, 79 Ind. 272; In re Terrell, 52 Kan. 29; Robert v. Hobart, 45 Ia. 501.) The Constitution vests the whole judicial power in the courts therein named. (Chandler v. Nahs, 5 Mich. 409; Zander v. Coe, 5 Cal. 230; State v. Hovey, (Ind.) 21 N. E. 245; People v. Maynard, 14 Ill. 419; Anderson v. Matthews, 8 Wyo. 307; Walsh v. Matchett, 26 N. Y. Supp. 43.) The condemnation proceeding was not one instituted in the district court; the summons was not returnable to that court; the appraisers were not selected by that court; and the court had nothing to do with the return of the appraisers; nor were the proceedings kept by the clerk of the court. (Mathus v. Ry. Co., (Neb.) 74 N. W. 30.)

It is submitted that the demurrer admitted all the facts alleged in the petition, as they are all well pleaded. If, therefore, the plaintiffs are entitled to any relief the sustaining of the demurrer was without warrant. The allegation that plaintiffs were in possession of the land under claim of absolute title, and that defendants claim an interest therein adverse to the plaintiffs, was a ground sufficient under our statutes to constitute a cause of action. It was the duty of the court under the allegations of the petition at least to temporarily enjoin the defendants from trespassing upon the land during the pendency of this action, notwithstanding that section 4029 declares that the court *may* grant a temporary order. The use of the word "may" was intended to repose a legal discretion in the court, but when the facts are sufficient to require a temporary order, then

the word "may" must be construed as imperative. The demurrer admits that the property condemned was not necessary for the purpose of the City, and that the land was in fact acquired for the use and benefit of Fort Russell; and that the proceedings were not instituted in good faith. The necessity for taking particular property is a judicial question and one for the courts. (Stearns v. Barre, 73 Vt. 281.) It is admitted by the demurrer that no ordinance was enacted by the City Council declaring a necessity for acquiring the land, nor authorizing or directing the condemnation proceedings. Such ordinance was and is a jurisdictional prerequisite, and its absence was fatal to the proceedings, as the City can act only by and through the Council, which authority in cases like this must be exercised in the form of an ordinance. It must follow, therefore, that the proceedings instituted by the mayor and city solicitor in the name of the city was without warrant in the law and absolutely void. Further, it is necessary that the jurisdictional prerequisites must affirmatively appear upon the face of the proceedings to give them validity.

It is admitted by the demurrer that the land was worth $86,000. It is clear that it would not be due process of law, which comprehends just compensation, to deprive plaintiffs of this valuable property upon the payment of the trifling sum of $2,200 which was awarded by the appraisers. The petition in condemnation proceedings under section 3084 is not required to be filed with the clerk of the court, nor do the proceedings belong to the court. The finding and rule of the judge is not made a matter of record in the court, nor do the appraisers receive their appointment from or file their return in the court. Neither process nor confirmation issues from nor occurs in the district court. Nor is there provision for judgment in any court for costs or otherwise. The fact that the person occupying the position of district judge was named as the original arbiter does not change the situation, since it requires more than the presence of the judge to constitute the district court.

*William A. Riner,* for defendants in error.

It is well established as a principle of law that the parties in condemnation proceedings are required to take notice of all adjourned meetings of the appraisers. (Leavenworth v. Meyer, (Kan.) 31 Pac. 700.) The plaintiffs had personal notice of the time and place of the appointment of the appraisers; they appeared by counsel; and, while the fact does not appear in the record, the selection of the appraisers made by the parties themselves was adopted and ratified by the court. This action is a collateral attack upon the condemnation proceedings, and therefore matters which could have been raised and decided in those proceedings cannot be litigated here. The authorities cited in the opposing brief to show that section 2915 is inapplicable to cities existing under special charter are not in point. Counsel seem to ignore the fact that the section was passed long before the adoption of the present Constitution, and that at the time it was passed Cheyenne was an incorporated city. Again the section was a part of an act specifically referring to the City of Cheyenne, and the act was passed mainly for the benefit of that city. It is plain therefore that the entire act, including said section, applied to Cheyenne; and the section was continued in force by section 3 of Article 21 of the Constitution.

Appraisers in condemnation proceedings do not constitute a compulsory board of arbitration within the meaning of the Constitution. An examination of the debates of the constitutional convention shows clearly that the compulsory boards of arbitration provided for were for the settlement of disputes between employer and employee. The right of appeal in condemnation cases is only statutory, and may be given or withheld as the legislature may see fit, unless the Constitution expressly provides otherwise. (R. R. Co. v. Ely, 95 N. C. 771; Lewis on Em. Dom., 2nd Ed., sec. 536; Central Etc. Co. v. Atchison, 28 Kan, 453; R. R. Co. v. Postal Etc. Co., 112 Ga. 941; Oliver v. R. R. Co., (Ga.) 9 S. E. 1086; Brown v. Board, (Mich.) 67 N. W. 566; Hayford v. Bangor, (Me.) 69 Atl. 688; R.

R. Co. v. Dickson, 31 Wis. 389.) The statute vesting the
authority to assess compensation in a board of appraisers
does not violate the Constitution. (Bellingham Etc. Co.
v. New Wharton, (Wash.) 54 Pac. 774; Decamp v. Archi-
bald, 50 O. St. 618; Michigan Etc. Co. v. Circuit Judge,
(Mich.) 107 N. W. 704; U. S. Etc. Co. v. Perkins, (Mich.)
114 N. W. 666.) As pointed out by the authorities cited,
the power exercised by the appraisers in condemnation pro-
ceedings is one which, whether denominated administra-
tive, judicial or *quasi* judicial, has been exercised in count-
less cases. All our laws regarding condemnation proceed-
ings provide for the exercise of such power in that way.
The position that the district court is the only authority
permitted to value property to be condemned and that it
cannot be done through appraisers appointed by the court
is wholly untenable.

The constitution cannot be construed as preventing the
appointment of appraisers by the district court or judge,
nor do the authorities cited sustain the proposition contended
for in that respect. We have been unable to find any de-
cision declaring that a court or a judge thereof may not
legally appoint appraisers in such proceedings. Statutes
empowering judges to make appointments in certain cases
have been held valid. (Com'rs. v. Collier, 213 Pa. St. 138;
New.Jersey Etc. Co. v. Board, 70 N. J. L. 186; State v.
Mounts, 36 W. Va. 179; State v. Anson, (Wis.) 112 N.
W. 475; People v. Nelson, 133 Ill. 566; Madison Co. v.
Moore, 161 Ind. 426; Wilkinson v. Guardians, 158 Ind. 1;
Schwartz v. Dover, 70 N. J. L. 502; Sweet v. Hulbert, 51
Barb. 312; State v. George, 22 Ore. 142.) In our judg-
ment, the case Terre Haute v. Evansville Etc. Co., 149
Ind. 174, is decisive of the contention here urged by counsel
for plaintiffs, and adversely to their contention. The case,
both as to its facts and the law involved, is substantially
like the case at bar. In that case it was held that a statute
providing for the appointment of city commissioners by the
circuit judge to determine the assessment of benefits and
damages in the laying out of streets was not unconstiu-

tional, as an attempt to confer executive power upon the judiciary.

Repeals by implication are not favored and will not be indulged unless it is manifest that the legislature so intended. This rule was recognized in State v. Owen, 7 Wyo. 84, and Standard Cattle Co. v. Baird, 8 Wyo. 144. Where two statutes covering the same subject matter are not irreconcilable, effect should be given to both. (Kuchler v. Weaver, (Okl.) 100 Pac. 915; Ry. Co. v. State, 82 Vt: 145; Jessee v. De Shong, (Tex.) 105 S. W. 1011; U. S. v: Healy, 160 U. S. 136; Morris v: Hitchcock, 21 App. D. C. 565; U. S. v. Greathouse, 166 U. S: 601.) Opposing counsel have not pointed out wherein the two statutes under consideration are repugnant and irreconcilable. An examination of them will disclose that they prescribe substantially the same system of procedure. But there are other and even stronger reasons why the statutes should be regarded merely as cumulative and as providing several ways to accomplish the same result. Both statutes deal with procedure alone, not with principles of substantive law: The rule is well established that a subsequent statute which institutes new methods of proceeding does not, without negative words, repeal a former statute relative to procedure. (Raudebaugh v. Shelley, 6 O. St. 307; Reynolds v; Hanrahan, 100 Mass. 313; Arzonica v. Board, (N. J.) 69 Atl. 450.) No reason is or can be assigned why these two methods of procedure cannot be permitted to stand side by side, thus allowing cities, in the most important matter of providing a wholesome and abundant supply of water to their inhabitants, to select the method of condemning real estate for such purpose which is most convenient and best adapted to their charter powers. Again, under the rule invoked by opposing counsel, in order to effect a repeal by implication, the act relied upon to accomplish that result must plainly show that it was intended as a substitute for the previous act. It is submitted that the acts which are relied upon in this case as accomplishing such result do not show that they

were intended as a substitute for the act which it is con-
tended was repealed. It is announced at the beginning of
the later act that the powers are therein conferred "in addi-
tion to other powers conferred upon them by law." The
evident intent of the legislature was to confer additional
powers upon cities, not to take powers from them.

This suit involves a collateral attack upon the condemna-
tion proceedings, and in order to succeed in such attack,
the proceedings must be shown to have been not merely
erroneous but absolutely void. Counsel do not call atten-
tion to any cases deciding that the award of inadequate com-
pensation renders the proceeding void. With reference to
the claim that the demurrer admitted that the property was
worth $86,000, it ignores the principle announced in Ricketts
v. Crewdson, 13 Wyo. 300, that a demurrer does not admit
statements of legal conclusions, not warranted by the facts
on which they are predicated, nor inferences from facts
which do not support them. There is nothing in the facts
well pleaded in the petition which justifies an inference that
the property is worth the amount stated. However, it is
well settled that the owner cannot resort to injunction merely
because it is claimed that damages given are insufficient.
That question could be and was fully raised and adjudicated
in the condemnation proceedings. The general rule is that
an injunction will not lie to restrain condemnation of prop-
erty where the questions could be presented and determined
in the condemnation proceedings. (Rockwell v. Bowers, 88
Ia. 88; Brown v. Philadelphia Etc. Co., 58 Md. 539; Cooper
v. Aniston Etc. Co., (Ala.) 4 So. 689; California Etc. Co.
v. Central Etc. Co., 47 Cal. 549; Black Hills Etc. Co. v.
Tacoma Etc. Co., 129 Fed. 312; Boyd v. Logansport Co.,
(Ind.) 69 N. E. 398; 2 Lewis Em. Dom., (2nd Ed.) pp.
1297-1298.) An injunction will not lie to restrain con-
demnation where there is adequate remedy at law. (15 Cyc.
987.)

Condemnation proceedings under section 3084 are pro-
ceedings in the district court. The section does not attempt

to vest jurisdiction in the district judge as such.  It is true
that the petition is required to be presented to the judge;
but the statute appplicable to railroad companies contains
substantially· the same provision.   The language of the
section indicates a scope entirely contrary to that contended
for by opposing counsel and it is plain the words "judge"
and "court" are used in the section interchangeably and as
synonymous.   (Pressly v. Lamb, 105 Ind. 171; R. R. Co.
v. Northern Etc. Co., 31 Ind. 239; Levy v. Bigelow, 6
Ind. App. 677;  State v. Smith, 107 Ia. 480;  Clark v.
.Stanton, 24 Minn. 232;  Guild v. Meyer, 59 N. J. Eq. 390;
194 U. S. 194;  Bank v. Guthrie, 173 U. S. 528.)

The question of the necessity for taking the property could
have been fully litigated in the eminent domain proceed-
ings.  (State v. Court, (Wash.) 95 Pac. 488.)· It is entirely
proper for the City to proceed to condemn property in the
manner outlined by the laws of the state, and an ordinance
is unnecessary.  An attempt is made to question the author-
ity of the City officers to act in its behalf in the condem-
nation proceedings.   But in plaintiffs' petition it is defi-
nitely alleged that the proceedings were instiuted by the
mayor and city attorney for and in behalf of the city.  Such.
admission certainly concludes the plaintiffs upon this point.
The cases cited in the opposing brief on this subject are not
at all applicable to the facts of this case.  Again, this ques-
tion could have been presented in the condemnation proceed-
ings, and the rule applies that on collateral attack such
matters will not be reopened.  It is apparent on the face of
the petition that plaintiffs appeared in the condemnation pro-
ceedings and contested all of the matters herein involved, in-
cluding the question of damages.  Having so appeared they
are estopped in this collateral suit from objecting to the
validity of the proceedings.  (Ney v. Swinney, 36 Ind. 454;
St. Joseph Etc. Co. v. Ry. Co., 109 Ind. 172;  Ogden v.
Stokes, 25 Kan. 517;  Dyckman v. New York, 5 N. Y. 534;
Crouse v. Whitlock, 46 Ill. App. 260; Hoye v. Diehls, (Neb.)
110 N. W. 714; 2 Lewis on Em. Dom., (2nd Ed.), p. 1305.) ·

POTTER, JUSTICE.

In an amended and substituted petition filed in this action the plaintiffs, Mary A. Edwards and Charles P. Lawrence, allege that they are the owners of a tract of land situated outside of the corporate limits of the City of Cheyenne; that said city claims to have acquired the same by condemnation for the purpose of constructing and maintaining water works thereon for said municipality and its inhabitants; that the city, through its officers, agents and employees, have taken possession of the land, and have caused to be erected and are erecting thereon, certain houses and other structures preparatory to the erection of an enormous masonry dam for the purpose of accumulating and storing vast quantities of water on said land; that the condemnation proceedings through which the city claims the right to occupy the premises were instituted and conducted improperly, in bad faith, and without authority of law; and that the compensation awarded the plaintiffs is groosly inadequate and was erroneously assessed. The prayer of the petition is that the said city, its mayor and city attorney, defendants in the action, be enjoined from claiming title to the land adverse to the plaintiffs and from committing further trespasses thereon, that the condemnation proceedings be adjudged void, and that the plaintiffs be adjudged to be the owners of the premises as against the defendants, that their title thereto be quieted as against said proceedings, and that plaintiffs have such other and further general relief as may seem just and equitable. A temporary injunction does not appear to have been granted.

The defendant city filed a general demurrer to the petition, and a similar demurrer was filed by the other defendants jointly. The demurrers were sustained, and the plaintiffs elected to stand upon said petition and declined to further plead, whereupon judgment was rendered dismissing the action and that the defendants recover their costs. Complaining of that judgment the plaintiffs bring the case here on error.

1.  The first question to be determined is whether the defendant city had power to condemn for water works purposes land situated beyond its corporate limits.

The power is denied by counsel for plaintiffs in error, not only as to land so situated but as to any land whatever. It is contended that no such power is conferred by the charter under which the corporate existence of the city is maintained, or by any other law valid for that purpose. It is particularly insisted that the provisions of section 2915, Revised Statutes of 1899 (Comp. Stat. 1910, Sec. 3831), under which it is assumed that the city proceeded in condemning the land, are not applicable to the City of Cheyenne, and do not authorize in any event the taking by condemnation of land outside of the corporate limits.

It may be conceded without deciding that the charter of the city, except as affected by general laws, does not confer any power to condemn the land in controversy for the purposes aforesaid.    But there are other statutes granting the power if lawfully applicable.    We shall follow the plan of the briefs in referring to the statutes as contained in the revision of 1899, unless the original acts are mentioned, as the compilation of 1910 had not been published at the time of the condemnation proceedings or when this action was brought and determined in the court below.    In section 2915, Revised Statutes of 1899, it is provided that, "whenever any water company or incorporated city or town of this state shall require any land, real estate, or claim, or right of way, for construction and maintenance of water works; or any land which may be affected by any operation connected with the construction or maintenance of the same, such water company or incorporated city or town may acquire such land, real estate, claim or right of way, in the same manner as is provided by section 3084, and said section shall be so construed to be as applicable to such water company, incorporated city or town as it is now applicable to road, ditch or telegraph companies specifically named therein."    Section 3084 contains provisions for the con-

demnation of land by road, ditch, telegraph or fluming companies, and, as amended in 1901, land required by telephone companies. Before considering other statutes on the subject we will dispose of the objections to the application of section 2915, with reference to the power granted to condemn land for the purpose therein stated. It is contended in the first place that the section never applied to a city or town existing under special charter.

It is true that the corporate existence of the City of Cheyenne has continued to be maintained under a special act commonly known as the City Charter approved December 14, 1877. At the time of its enactment the creation of municipal corporations by that kind of legislation was not prohibited. The first provision controlling the legislature of Wyoming which prohibited local or special acts creating cities and towns or amending the charters thereof, was incorporated in an act of Congress approved July 30, 1886, when Wyoming was under a territorial form of government. The same restriction upon legislation with reference to cities and towns is found in our state Constitution which became effective upon the admission of the state July 10, 1890. The provisions of section 2915 were enacted in 1882 by the territorial legislative assembly as section 10 of an act entitled: "An act to enable the City of Cheyenne to provide a water supply for the inhabitants thereof, to extinguish fires, and for other purposes." That act authorized the City of Cheyenne to grant to any person, persons or company for a term of years the exclusive right to construct and maintain a system of water works to supply said city with water for the extinguishment of fires, and the inhabitants thereof with water for domestic, manufacturing and other purposes; and also authorized the city to construct such water works itself, if the mayor and council should so decide, and to issue bonds to provide funds for that purpose. The act also authorized the city council to make all needful ordinances, rules and regulations for the protection of such water works and all property connected

therewith, whether the same be located "wholly or in part in the limits of said city." At the time of the passage of said act the only municipal corporations in Wyoming were those created by special charter, and at that time also, as above stated, local or special legislation amending such charters was permissible, and if the provisions now found in section 2915 did not apply to such corporations they applied to no municipal corporation. They were clearly intended to apply to Cheyenne, for otherwise there is no reasonable explanation of their presence in the act. And the powers mentioned in the section must be held to have been conferred upon the City of Cheyenne, whatever might be said under other circumstances of the sufficiency of the words "any incorporated city or town," to include a municipality existing under special charter.

The Constitution expressly recognizes municipal corporations existing under special charter and provides that they may abandon the same and re-organize under the general laws of the state. We have held that it was not intended by the Constitution to abrogate any special charter or to make the abandonment thereof compulsory. (McGarvey v. Swan, 17 Wyo. 120.) We also held in the case cited that although a special charter can not under the Constitution be amended by a local or special act, it may be amended in effect by a general law. And it is well settled that a law which is general may be applicable to a city or town existing under a special charter previously and lawfully granted, the language of the act being sufficient to include such a city or town, without violating a constitutional provision prohibiting the amendment of charters by local or special act. (Sanford v. Tucson, (Ariz.) 71 Pac. 903.)

Do the provisions contained in section 2915 authorize the condemnation of lands situated outside the corporate limits? The language of the section is general without any restriction as to locality in designating the extent of the power granted. It was manifestly intended to confer power to procure an adequate supply of water for the municipality

and its inhabitants.   This is an object of great public utility, and a statute having it in view is entitled to a liberal interpretation in order, if possible, to carry out the evident legislative purpose.   We think it a matter of common knowledge that it is not unusual, indeed that it is ordinarily necessary, for a municipality to go beyond its corporate limits to procure a proper and adequate supply of water for the purposes aforesaid; and it is reasonable to suppose that the legislature intended to provide for such well known necessity by the use of the comprehensive language employed in the section.   Further, the act in which the provisions of the section were first incorporated seems to have recognized the probability that a part of the water works to be constructed would be located outside the city limits, for it expressly authorized the city council to provide by ordinances, rules or regulations for the protection of any water works constructed or maintained under the provisions of the act and of all property connected therewith "whether such water works be wholly or in part located in the limits of said city."   And again the city was and is expressly empowered by its charter to pass rules and ordinances for the protection of lands and ditches used for water purposes outside of the city limits; and the officers of the city are granted full jurisdiction and power in enforcing such rules and ordinances.   (Rev. Stat. 1899, sec. 1287, par. 36.) The language employed in section 2915 describing the property authorized to be acquired by condemnation proceedings would, unless restricted by construction, be broad enough to cover land outside the limits of the city, and no reason is perceived for limiting its operation or meaning. We hold, therefore, that authority was conferred upon the city by the section aforesaid to exercise the power of eminent domain for the purpose of acquiring any land within or without the limits of the city required for the construction and maintenance of its municipal water works or which might be affected by any operation thereof.   (Warner v. Town of Gunnison, 2 Colo. App. 430, 31 Pac. 238.)

When the provisions of section 2915 were enacted, the section referred to therein as prescribing the condemnation procedure was known as section 45 of an act approved December 10, 1869, entitled: "An act to create and regulate corporations;" and railroad companies were specifically mentioned as within its operation. The original provision of section 2915 referring to the procedure was as follows: "In the same manner as is provided by section 45 of an act entitled: 'An act to create and regulate corporations,' approved December 10th, 1869, and said section shall be construed to be as applicable to such water company, incorporated city, or town as it is now applicable to road, railroad, ditch or telegraph companies specifically named therein." The provisions of the statute so referred to were thereby adopted as a part of the section with the same effect as if they had been incorporated bodily therein. (3 Lewis' Suth. Stat. Constr., sec 405; Ins. Co. v. Fire Dept. &c., 117 Ala. 631; Culver v. People, 161 Ill. 89; Furbish v. Com'rs., 93 Me. 117; Greenfield Ave. &c., 191 Pa. St. 290.)

In 1890 an act was passed entitled: "An act to confer additional powers upon municipal corporations, and for other purposes." It was expressly declared in the act that it was intended to apply to all cities and towns whether incorporated by special charter or general laws. Among other powers conferred each city or town was authorized "To establish, construct, purchase, extend, maintain and regulate, * * * * a system of water works. To establish, construct, purchase, extend, maintain and regulate a system of ditches, aqueducts and reservoirs, for supplying water to its inhabitants, and to its streets, parks and public grounds for irrigating purposes." The act contained the following provision: "For any of the purposes specified in this act, any city or town may go beyond its territorial limits, and may take, hold and acquire property, by purchase or otherwise, shall have power to take and condemn all necessary lands and property therefor in the man-

·ner provided by the laws of this territory, relating to condemnation of real estate by railway corporations, and for the ·purpose of preventing or punishing any pollution or injury to the stream or source of supply of the ditches ·or otherwise, its jurisdiction shall extend along such stream and source of supply for a distance of twenty-five miles beyond its corporate limits, or further, if such water supply shall be obtained at a greater distance, and shall include and shall extend over the entire distance occupied by such ditches or reservoirs." It was also declared in the act that it was intended to be of general and uniform operation and that "its provisions are in addition to all laws and provisions now in force, and shall not be construed to impede, or be impeded by, or to impair or be impaired by the operation of any general or special law not necessarily inconsistent with the provisions hereof." (Laws 1890, Ch. 52; Rev. Stat. 1899, secs. 1735, 1743, 1744.) The act did not expressly repeal any other statutory provision, nor has it been expressly repealed by any later act.

Another act of similar import was approved January 6, 1891, the first section reading as follows: "In addition to other powers conferred upon them by law, each incorporated city or town in the State of Wyoming shall have power and authority, to construct, purchase, extend, maintain and regulate a system of water works to supply said city or town with water for the extinguishment of fires, and for supplying the inhabitants thereof with water for domestic, manufacturing and other purposes."

This act also is expressly declared to apply to all cities and towns, whether incorporated by special charter or under general laws, and "to be of general and uniform operation throughout the state." In one section of the act it is provided that for the purpose of carrying out any of the powers conferred any city or town may go beyond its corporate limits, and may take, hold and acquire property by purchase or otherwise, and that "it shall have power to take and condemn all necessary lands and property there-

for, in the manner provided by the laws of the state, relating to the condemnation of real estate by railroad companies." (Laws 1890-91, Ch. 27; Rev. Stat. 1899, secs. 1704, 1713 & 1714.) This act contained no express repealing clause, nor did it contain a provision like that in the act of 1890 expressly limiting its construction. There can be no doubt that these acts of 1890 and 1891 were general laws and applicable as such to the City of Cheyenne, and that they each conferred power upon that city to condemn lands and other property, whether within or beyond its corporate limits, necessary for the construction and maintenance by the city of a system of water works.

2. It will be observed that, while section 2915 provides that the power may be exercised in the manner provided by section 3084, the acts of 1890 and 1891 provide that the necessary land or property may be taken and condemned in the manner provided by law for the condemnation of real estate by railroad companies. For that reason it is contended by counsel for plaintiffs in error that so far as the procedure is concerned, the act of 1891 operated as a repeal of section 2915. They argue that the later act was intended to cover the whole subject, and therefore must be held to have repealed the former provision authorizing a different procedure. On the other hand the city attorney contends that the two provisions are not repugnant either in language or effect; that there is no legal objection to the existence of two forms or methods of procedure to accomplish the same purpose, even though they might materially differ; but that the matter is here simplified for the reason that the two methods provided are substantially the same. Counsel for plaintiffs in error also contend that if the city had authority to proceed under sections 2915 and 3084, no right could be legally acquired in that manner, on the ground that section 3084 is unconstitutional and void, as authorizing the taking of private property for public use without due process of law; compelling the submission of property rights to a compulsory board of arbitration without the

right of appeal; denying the property owner the right of trial by jury; conferring judicial duties upon a body of appraisers, or administrative and legislative duties upon the district judge; and failing to provide for an appeal from the final order in the condemnation proceeding.

As the comparative effect of the statutes conferring the power of eminent domain upon the city may depend somewhat upon the procedure respectively, we think it in order to examine the provisions of section 3084 adopted by section 2915 and those relating to condemnation proceedings by railroad companies referred to in the acts of 1890 and 1891, first considering the objections aforesaid urged against the invalidity of the procedure prescribed by section 3084.

In support of those objections our attention is directed to the following constitutional provisions. "No person shall be deprived of life, liberty or property without due process of law." (Art. I, sec. 6.) "Private property shall not be taken for public or private use. without just compensation." (Art I, sec. 33.) "The right of trial by jury shall remain inviolate in criminal cases, but a jury in civil cases in all courts may consist of less than twelve men, as may be prescribed by law." (Art. I, sec. 9.) "The judicial power of the state shall be vested in the senate, sitting as a court of impeachment, in a supreme court, district courts, justices of the peace, courts of arbitration and such courts as the legislature may, by general law, establish for incorporated cities or incorporated towns." (Art. V, sec. 1.) "Appeals from decisions of compulsory boards of arbitration shall be allowed to the supreme court of the state, and the manner of taking such appeals shall be prescribed by law." (Art. V, sec. 28.) The section conferring original jurisdiction in all cases at law and in equity upon the district court (Art. V, sec. 10) is also referred to.

Under section 3084 the compensation to be paid to the property owner is required to be ascertained by three disinterested appraisers to be appointed by the district court or the judge thereof. The persons so appointed, do not as

contended, constitute a court of arbitration or a compulsory board of arbitration, within the meaning of either section 1 or 28 of Article V of the Constitution. The tribunals referred to in those sections as courts of arbitration or compulsory boards of arbitration are unquestionably, we think, those provided for in one of the miscellaneous provisions of the Constitution as follows: "The legislature shall establish courts of arbitration whose duties it shall be to hear and determine all differences and controversies between organizations or associations of laborers and their employers, which shall be submitted to them in such manner as the legislature may provide." The debates and proceedings of the Constitutional Convention disclose that the adoption of that provision was the direct cause for inserting "courts of arbitration" in section one of the article relating to the judicial department of the state, for the purpose of avoiding any question as to its being in conflict with the provision for the establishment of such courts. No other courts of arbitration or compulsory boards of arbitration are defined or provided for in the Constitution.

We cannot agree with the contention that section 3084 authorizes the taking of private property for public use without due process of law. It requires the petition for the taking of the land or property and the ascertainment of the compensation to be paid to the owner or other person interested therein to be presented to the district judge, and, before acting, the judge is required to have satisfactory evidence that notice of the intended application, and the time and place thereof, has been given at least ten days previously to such owners personally at their residence or on the premises, or by publication in a newspaper printed in the county, or, if there is no such newspaper, then by posting three or more notices in public places in the county, where it appears by affidavit that the owners or persons interested have no residence in the county, the notice in such case to be published at least thirty days prior to the time fixed for the application. The "court or judge" is authorized

to adjourn the proceedings from time to time, and required
to direct any further notice thereof to be given that may
seem proper, to have proofs and allegations of all parties
interested touching the regularity of the proceedings, and,
"by an entry in its minutes" appoint three disinterested
appraisers, specifying in such entry a time and place for
their first meeting. The appraisers are required to take
an oath to faithfully and impartially discharge their duties,
and any one of them, it is provided, may administer oaths
to witnesses produced before them; it is also provided that
they may issue subpoenas and compel witnesses to attend
and testify; that they may adjourn and hold meetings for
that purpose, and "shall give reasonable previous notice to
the owners or parties interested." They are expressly re-
quired to hear the proofs and allegations of the parties, and
any two of them, after reviewing the premises, "shall, with-
out fear, favor or partiality, ascertain and certify the com-
pensation proper to be made to said owners or parties inter-
ested for the lands, real estate or claims to be taken or af-
fected, as well as all damages accruing to the owners or
parties interested in consequence of the condemnation of
the same taken or injuriously affected." A certificate of
such ascertainment is required to be filed by the appraisers
or a majority of them with the register of deeds of the
county, in which certificate the lands must be described with
convenient certainty and accuracy. Upon such certificate,
and due proof that such compensation and separate sums,
if any be certified, have been paid to the parties entitled
thereto, or have been deposited to the credit of such parties
in the county treasury, or other place for that purpose "ap-
proved by the court," the district judge, it is provided, shall
make and cause to be entered "in the minutes" a rule de-
scribing such lands with convenient certainty and accuracy,
such ascertainment of compensation and the mode of making
it, and the payment or deposit of compensation, a certified
copy of which shall be recorded and indexed in the office
of the register of deeds of the proper county, in like manner

and with like effect as if it were a deed of conveyance from the owners or parties interested to the corporation. Upon the entry of such rule the petitioning corporation is declared to become seized in fee, or to have the exclusive right, title and possession of the lands required to be taken during the continuance of the corporation, and may take possession of and hold and use the same for the purposes of the construction requiring such possession and use. There is a provision in the section authorizing "the court" to appoint another in the place of any appraiser who shall die, or be unable or fail to serve, on reasonable notice of the application to be approved "by the district judge." Also a provision to the effect that if the title so acquired, "or if said assessment shall fail or be deemed defective," the corporation may proceed and perfect such title by procuring an ascertainment of the compensation proper to be made to any person who has title, claim or interest in, or lien upon the lands.

It is clear that the section provides for reasonable notice to the property owner and ample opportunity for him to be heard at each stage of the proceeding, and also for the payment of just compensation to be ascertained by an impartial tribunal. In Sterritt v. Young, 14 Wyo. 146, it was said by this court: "The proceedings to condemn property under the right of eminent domain is not a civil action, nor is it necessary that it should be considered in the ordinary course of legal proceedings. The appointment of appraisers may be confided to any fair tribunal, board or officer and still be due process of law, provided, the land owner shall have notice and an opportunity to be heard." And that principle is well settled. On the ground that it had been the practice in England and America before any of our constitutions were adopted to ascertain the compensation to be paid for property taken for public use by other agencies than a common law jury, it is well settled that a general expression in a constitution that the right to trial by jury shall remain inviolate does not apply to or affect a pro-

ceeding to condemn property under the power of eminent domain. (2 Lewis on Em. Domain, 3rd Ed., sec. 509.) And in the absence of an express provision in the Constitution granting it, a jury trial is not a constitutional right in such cases. (Id.) Neither is a provision for an appeal essential to the validity of a condemnation statute or proceeding unless required by the constitution, (Id. secs. 787, 788.) We need not consider whether an appeal to this court is authorized in the proceeding provided for by section 3084, for this is not an appeal, and it does not appear that an appeal was attempted.

The words "court" and "judge" or "district judge" appear to be used interchangeably in the section as indicating the same thing. The order appointing appraisers is to be entered "in the minutes," and the concluding order, referred to as a "rule," is also to be entered "in the minutes," which can only mean the minutes of the court. The deposit of the compensation money may be made in the county treasury or other place "approved by the court;" and the "court" may appoint another appraiser in case one previously appointed dies or fails or is unable to serve. We perceive, therefore, no ground for holding that the proceeding is before the judge rather than the court, even if that would constitute a valid objection to the statute.

It is apparent also that the property owner may interpose any objections or exceptions that would be proper in such a proceeding, although the statute does not so expressly provide. It does, however, require the court or judge to hear the proofs and allegations of the parties touching the regularity of the proceedings. But the silence of the statute in that particular could not be held to amount to a denial of the right of the owner to file counter pleadings or motions contesting the right of the petitioner or stating objections at any stage of the proceedings. It would be unreasonable to provide for notice to the owner, and then allow him no part as a contestant. "The policy of the law generally is to have all matters arising out of one controversy settled in a

single suit, and this ought to be so, especially in a proceeding the effect of which is to take the defendant's land against his will and invest the plaintiff with a fee simple title to it." (C. & W. R. Co. v. Ry. Co., 99 Va. 715; R. R. Co. v. Rudd, 5 Colo. 270.)

Thus we hold that the provisions contained in section 2915 applied to the City of Cheyenne, unless repealed or modified in the matter of condemnation procedure by later legislation; that thereby, as well as by the acts of 1890 and 1891, the city was granted power to condemn land within or without the corporate limits required for the construction and maintenance of water works; and that the condemnation procedure authorized by section 2915 is not violative of any provision of the Constitution.

3.   As above stated, counsel for plaintiffs in error present the further objection to the application of section 2915 that it has been repealed as to the manner in which the land required may be condemned by the act of 1891; and it is contended that whatever power the city had it was permitted to be exercised only in the manner provided for the condemnation of real estate by railroad companies. But that question, for reasons now to be explained, we deem immaterial in this case upon the demurrer to the petition. Although it is assumed by counsel for plaintiffs that the proceedings were instituted under the authority conferred by section 2915, and conducted solely according to the provisions of section 3084, and counsel for the city seems to concede that they were conducted upon the theory that said sections applied, the petition fails to show that the proceedings were in fact so instituted and conducted, or that any right of plaintiffs granted by the statutes relating to railroad companies was denied them.   With the exception of a provision in that statute for a jury trial on demand of either party upon certain conditions after the filing of the report of the commissioners appointed to ascertain the compensation, and the further express provision for an appeal, the form of procedure thereby prescribed is

practically the same in every essential particular as that prescribed in section 3084.

In the petition in the case at bar the condemnation proceedings are not set out in any way. It is alleged that the city claims to be the owner of the lands in controversy by virtue of a certain rule made by the district judge as provided in section 3084, in certain proceedings instituted under and by virtue of section 2915 to condemn the land for the alleged purpose of constructing and maintaining thereon water works for said municipality and the inhabitants thereof; and further that said city is now claiming to be the owner of said land by virtue of said proceedings and the deposit of the sum of $2200 (the amount of the compensation returned by the appraisers) in the office of and with the treasurer of the county in the manner and as provided in sections 2915 and 3084.

The statute relating to condemnation proceedings by railroad companies was enacted in 1888. (Rev. Stat. 1899, secs. 2916-2952.) Such proceedings are conducted in the district court or before the district judge, the same as the proceeding under section 3084. The petition is required to be presented to the district judge. Ten days personal notice of the intended filing of the petition is required, or the notice may be published four consecutive weeks where the person to be notified is beyond the state or his residence is unknown. On the day named in the notice the court or judge is required to hear and determine the questions of the existence of the corporation, its right to make the appropriation, its inability to agree with the owner, and the necessity for the appropriation. Determining these questions in favor of the corporation an order is to be entered appointing three impartial freeholders of the county not interested in a like question, to ascertain the compensation to be paid for the taking or injuriously affecting the property, and fixing the time within which the said commissioners shall make such assessment. The court or judge may also appoint other commissioners in place of any who may die, or refuse or

neglect to serve. The commissioners are required to take an oath to faithfully and impartially discharge their duties; and they or a majority of them are required to file with the clerk of court a certificate of their assessment in which the property must be described with convenient certainty and accuracy. It is then provided that exceptions may be filed to the award within thirty days after the filing of the certificate, and that, on good cause shown, the court may order a new assessment, or may make such order as right and justice may require. If no sufficient exceptions are filed, and no application made for jury trial, the report is to be confirmed. Either party may, within thirty days after the filing of the certificate, if not satisfied with the award, demand in writing a trial by jury, upon showing by affidavit that the demand is made in good faith and not for delay, and is thereupon entitled to a jury trial. Upon the confirmation of the report, or the verdict of the jury, and due proof that the compensation has been paid or has been deposited to the credit of the proper parties with the clerk of court or county treasurer, or in such other place as may be approved by the court for such purpose, the court is required to make and cause to be entered an order, the recitals and effect whereof are the same in every particular as the final order or "rule" provided for in section 3084, and it is likewise to be recorded in the office of the register of deeds.

This statute provides specifically as to what the petition shall contain; but we think that the requirements as to the petition under section 3084 are substantially the same, although that section is not specific in that respect. It is clear that such petition must show that the property to be taken is required and that it may properly be taken, and that would include the particulars mentioned in the other statute. And it follows also that the same questions required to be determined before the appointment of the assessing tribunal in a proceeding to condemn for railroad purposes must be determined in a proceeding under section 3084,

including the "necessity" for the appropriation, so far as that is a question for judicial investigation. The statute of 1888 provides expressly for exceptions to the award. Although section 3084 is silent in that regard, we entertain no doubt that such exceptions are permissible in a proceeding thereunder, and that thereon the award and certificate of the appraisers may be reviewed by the court, and that the same may be vacated if the exceptions are sustained. Under the act of 1888 the certificate of the award is required to be filed with the clerk of court, and by section 3084 with the register of deeds. But though first filed and required to be filed with the register of deeds, it is evident that it must in some manner, either by copy, duplicate, or a full statement of its contents come before the court and for that purpose upon the files of the proceeding in the clerk's office, for it is "upon such certificate" that the concluding order is made. The difference between the two statutes in that respect is therefore not substantial. So with the requirement in the act of 1888 that the petition be filed with the clerk of court. Though it is not so expressly required by section 3084, it is nevertheless proper that the petition under that section be so filed, and we think that has been the practice.

The provisions controlling the proceedings to condemn land required by a municipal corporation for water works purposes are to be found in one or the other of the two statutes above considered. It may be that such proceedings are authorized under either statute, though we do not decide that question, nor do we decide which of the statutes would apply, if only one. There is enough in the petition to disclose that the defendant city claims to have acquired a right to the land in controversy by condemnation, and this is a collateral attack upon the proceedings brought by the city to condemn the land. It must be presumed, unless the contrary appears, that the court followed the proper procedure; and in the absence of a sufficient showing that the proceedings complained of were so conducted as to be sustainable only, if at

all, upon the provisions of the statute deemed by counsel
for plaintiffs to have been inapplicable, there is no neces-
sity for deciding whether that statute applied or not.

As above stated, it is alleged that the city claims title
under a rule made as provided in section 3084, in certain
proceedings instituted under and by virtue of section 2915.
If that averment is not a mere conclusion of law, so far as it
declares the order to have been made and the proceeding
to have been instituted as provided in and by virtue of the
specified sections, it is at least too indefinite and uncertain
upon which to base a decree adjudging the proceedings to
be void, or a right to equitable relief on the ground of their
alleged invalidity. And the same comment applies to the
averment that the city is claiming the land by virtue of said
proceedings and the deposit of the amount of the assessed
compensation in the office of and with the county treasurer
in the manner and as provided in sections 2915 and 3084.
Precisely the same order vesting title in the condemning
party is provided for in each statute and upon the same
conditions, excepting only that under one statute there may
have been the verdict of a jury, but that exception is not
important here, for it is not alleged that there was or was
not a jury trial or that such a trial was demanded or denied.
And both statutes provide for the deposit of the amount of
the compensation with the county treasurer to the credit of
the parties entitled thereto. Under these circumstances we
are inclined to regard the averments aforesaid as stating
nothing as to the nature of the proceedings but conclusions
of law, unsupported by any fact alleged in the petition, and
therefore not admitted by the demurrer. But whether ob-
jectionable as conclusions of law or not they must be held
too uncertain and indefinite and therefore insufficient to
show that the proceedings were brought and maintained
under a particular section or sections of the statutes.

There is no other averment in the petition tending to ex-
plain the proceedings in this respect, except that the per-
sons who assessed the compensation are referred to as

"appraisers." It is not alleged that they were appointed by that name, nor is the fact of appointment alleged in any manner. We do not suppose that in a proceeding clearly brought under the statute relating to railroad companies the error would be substantial if the persons appointed to ascertain the compensation were designated as appraisers instead of commissioners in the order appointing them or at any other stage of the proceeding. It is noticeable that while section 3084 provides for the appointment of three disinterested appraisers, and the other statute provides for the appointment of three impartial freeholders of the county not interested in a like question, there is no averment in this petition that the persons appointed did not possess the qualifications prescribed in the latter statute, or that those qualifications were not considered in making the appointment. It is clear that the mere reference to "appraisers" in the petition is not sufficient in this kind of case to show that appraisers and not commissioners were appointed, or that the proceeding was maintained only under one statute rather than the other. Certainly it is not sufficient to justify the equitable relief prayed for.

Another paragraph of the petition ought, perhaps, to be mentioned. It alleges that for certain reasons, such as lack of authority in the city to condemn land for water works purposes, and the unconstitutionality of sections 2915 and 3084, the city acquired no rights whatever by virtue of the condemnation proceedings and the resulting rule of the judge. Conclusions of law only are stated in that paragraph.

4. In the consideration of the remaining questions in the case the condemnation proceeding must be regarded as one brought and conducted in the manner authorized by law before the proper tribunal. The proceeding is not here on appeal or otherwise for the correction of errors, but the plaintiffs are seeking in equity to be restored to their alleged rights of ownership that were interfered with by the condemnation proceeding and claimed by the defendant city to have been acquired thereunder. A court of equity may, in a proper

case, enjoin the enforcement of a judgement which is absolutely void. It may also enjoin an entry upon private property under color of the power of eminent domain until the right to make such entry has been perfected by a full compliance with the constitution and the laws, when such compliance is lacking either through failure to pay, tender, or deposit just compensation as required by law, or through invalidity of the condemnation proceedings, or of the condemnation statute. (5 Pomeroy's Eq. Jur. sec. 465; Lewis' Em. Domain, 3rd Ed., secs. 901, 902.) But mere irregularities or errors in the proceedings leading up to a judgment constitute no ground for equitable interference unless the result of fraud or collusion, or of such a nature as to deprive a party of all opportunity to defend in the action at law. (23 Cyc., 1002, 1005.) Thus a judgment will not be so interfered with on the ground that it is erroneous as a matter of law, or on account of defect or insufficiency of the pleadings. Where it is satisfactorily and clearly shown that through fraud, accident, mistake, or miscalculation a judgment is entered for an amount or in terms not intended by or inconsistent with the pleadings, it is said that equity may afford relief, but in such a case it must appear that the party had no adequate remedy by motion, appeal or other proceeding at law, and the relief will not be granted if the party is chargeable with negligence in permitting the mistake to occur or in failing to seek his remedy in due time. (Id. 1005, 1006.) So with reference to condemnation proceedings, relief in equity will be denied where it is based upon mere irregularities not rendering the proceedings invalid. A clear right to the relief in any case must be shown. Where an owner appears in condemnation proceedings he cannot afterwards enjoin an entry on grounds which might have been litigated in such proceedings. (Lewis' Em. Dom., 3rd Ed., sec. 903.) And generally where the proper tribunal has acquired jurisdiction in condemnation proceedings they cannot be avoided collaterally for mere irregularities or errors, and objections which were avaliable in the proceed-

ings cannot be raised by those who were parties thereto in any collateral suit. (Id. sec. 866 & cases cited.)

As the petition alleges nothing to the contrary the plaintiffs were presumably parties to the condemnation proceedings and had due notice thereof. Indeed there is a statement in the petition that the land was taken over the persistent objections and protests of the plaintiffs. With the principles in mind concerning the conclusiveness of the condemnation proceedings and the grounds upon which equitable relief may be granted, we are prepared to consider the allegations of the petition not previously discussed.

5.   It is alleged that the sum of $2200 was awarded to the plaintiffs as compensation for the land taken, and that the same was deposited by the city in the office of and with the county treasurer, and that the fair and reasonable value of the land is greatly in excess of that amount. For the purpose of showing the inadequacy of the compensation so awarded, it is alleged that the land is underlaid with rich and vast deposits of gold, silver and copper ore of high grade and of the fair and reasonable value of $50,000; that as a site for a dam to accumuate and store water for power and irrigating purposes the land was of the fair and reasonable value of $25,000; that the water appropriations and privileges attached to and used for the reclamation and irrigation of the land were of the fair and reasonable value of $3,000; and that for agricultural purposes alone the land is of the fair and reasonable value of $8,000. Further, that the deposits of ore and the valuable water rights were the property of plaintiffs at the time of and prior to the condemnation proceedings; that the appraisers well knew of the said deposits of ore, of the existence of said water rights, and of the value of the land as a site for a dam, but that they failed and refused to consider the same as elements of value. In this connection it is also alleged that the finding of the appraisers was the result of passion and prejudice on their part and their personal interest as tax payers and owners of property in the City of Cheyenne. If the averment of

personal interest on the part of the appraisers is intended to raise the question of their qualification, that cannot be done in this action, for the proper time to have objected on that ground was when the appointment was made, and the failure to make the objection at the proper time amounted to a waiver of any disqualification then known to plaintiffs. (New London v. Davis, 74 N. H. 56; Huling v. Kaw Valley Ry., 130 U. S. 559.)

The difference between the alleged value of the property for the specified purposes and the compensation alleged to have been awarded to plaintiffs is all that tends to support the charge that the award was influenced by passion and prejudice. But the difference is not nearly so great when we come to examine the allegations of value and test their sufficiency in an action for equitable relief under the rules controlling the determination as to the compensation to be paid for land taken in condemnation proceedings. The market value is what fixes the amount of compensation. In ascertaining the market value it is proper to consider the adaptability of the land to a particular purpose, and in that connection the probable demand for property so situated for that purpose should also be considered, especially if the purpose be an unusual one, that is, such a demand as would affect the market value of the property. The usual rule is laid down in Lewis on Eminent Domain, (3rd Ed.) section 706, as follows:

"In estimating the value of property taken for public use it is the market value that is to be considered. The market value is the price which it will bring when it is offered for sale by one who desires but is not obliged to sell it, and is bought by one who is under no necessity of having it. In estimating its value all the capabilities of the property, and all the uses to which it may be applied or for which it is adapted, are to be considered, and not merely the condition it is in at the time and the use to which it is then applied by the owner. It is not a question of the value of the property to the owner. Nor can the damages be enhanced

by his unwillingness to sell or because of any sentiment which he has for the property. On the other hand, the damages cannot be measured by the value of the property to the party condemning it, nor by his need of the particular property."

The question, however, is not what the value of the land may be for a particular purpose, but what is the market value, considering all the purposes for which it may be adapted; .and, therefore, it is usually held that while witnesses may testify as to the purposes for which the property is adapted, its availability for a particular use, its condition and surroundings, their opinion as to value should be based upon its market value, rather than its value for a specified purpose. (Lewis Em. Dom., sec. 707.) It necessarily follows that uses which are so remote and speculative as to add nothing to the market value at the time are not entitled to consideration. (Id. sec. 709.) With reference to the alleged value of the land for the purposes of erecting a dam thereon and storing water for power and irrigating purposes, the location and surrounding of the land relative to other places, enterprises or objects is not disclosed, nor is any fact alleged from which a court could say that its suitability as a site for a dam and reservoir for power and irrigating purposes is so manifest and so clearly added to the market value of the land, that its exclusion as an element of value could not be accounted for on any reasonable ground other than passion or prejudice of those regularly appointed to ascertain the value. The fact that the city required the land for the purpose of erecting a dam thereon would not affect the question. Is the land so situated and the demand for dam and reservoir sites for power and irrigating purposes in the particular locality so great or probable as to enhance the market value? The plaintiffs allege it had a large value for such a purpose. We must suppose that the appraisers took a different view of that matter. If this was to be heard on exceptions to the award, something more than a mere general statement of the plaintiffs, unsupported

by any facts which would permit of an intelligent considera-
tion of the matter, would be required to justify interfer-
ence with the judgment of officials sworn to perform their
duties faithfully and impartially.

With reference to the alleged value of mineral ore under-
neath the surface, even less ground is presented for the
charge that it was excluded through passion and prejudice
of the appraisers. There is no averment to show that any-
thing had been done toward prospecting or developing the
alleged mineral resources of the land, or that it adjoined or
was in the neighborhood of a mine or mines producing such
minerals. It is a matter of common knowledge that the
value of land as dependent upon mineral bearing ore beneath
the surface is entirely speculative, without development suf-
ficient to demonstrate in a reasonable degree the situation,
character and quantity of such ore, and the necessary ex-
pense attendant upon bringing the same to the surface and
extricating the metals therefrom. The location of the land
with reference to transportation facilities may also have an
important bearing on the question. The value alleged in this
particular is the value of the ore, and that was not the
question before the assessing board. (Searle v. D. & B. R.
R. Co., 35 Pa. St. 57.) If it be conceded that the taking of
the land for the purpose of the proposed works of the city
would deny the plaintiffs access to and the right to mine
such ore, the averment is insufficient standing alone to
show that the value as alleged was anything more than purely
speculative; and, as such, it would not have been admissible
to prove the market value of the land. (Lewis' Em. Dom.,
3rd. Ed., sec. 725; Ry. Co. v. Davis, 58 W. Va. 620.)

Water rights attached to and used for the reclamation and
irrigation of the land would of course add to its value, but it
was not the duty of the appraisers to fix a value upon such
rights separately. On the contrary, their duty was to ascer-
tain the market value of the land with all appurtenances, in-
cluding the water rights, if the land was so taken as to in-
clude or injuriously affect them. (Lewis' Em. Dom., 3rd

Ed., sec. 721.)   There is an allegation in a separate para-
graph of the petition that the city did not acquire or at-
tempt to acquire the said water rights, and that the same
have been lost to the plaintiffs through the alleged tres-
passes of the city.   Without having the record in the con-
demnation proceedings before us, we shall not assume to
determine their effect upon whatever water rights, appro-
priations or privileges the plaintiffs may have had.   The
only effect of the allegation as to the value of water rights
seems to be that their value as separate and distinct from
the land was not considered.   As above stated, the value of
the land being the question, its value with appurtenances
formed a proper basis for ascertaining the compensation.
It any admissible evidence was excluded, or if the ap-
praisers adopted an erroneous measure of compensation,
the matter could have been presented to the court upon ex-
ceptions at the proper time, and that may have been done
for all that this petition shows.   Such error, if any, cannot
be reviewed here.

Though we have discussed the question of the sufficiency
of the specific allegations of the petition to support the
general charge that the appraisers were influenced by pas-
sion and prejudice in the matter left to their determination,
we do not wish to be understood as holding that such a
charge, if substantiated, would itself furnish ground for
equitable relief.   No authority to that effect has been called
to our attention.   We think that the adequacy of the com-
pensation can only be questioned on that as well as other
grounds at the proper time and in the proper manner in
the condemnation proceedings.   Inadequacy of the com-
pensation awarded by the tribunal selected as provided
by law is not alone a ground for avoiding the proceedings
in a collateral suit.   (Lewis' Em. Dom., sec. 866;   Hopkins
v. Cravey, 85 Tex. 189;   Campau v. Le Blanc, 127 Mich.
179;   Fleming v. R. R. Co., 115 N. C. 676;   Hazelhurst v.
Baltimore, 37 Md. 199;   Hopkins v. Keller, 16 Neb. 569;
Lancaster County v. Lancaster City, 170 Pa. St. 108;
Briscoe v. Macfarland, 32 App. D. C. 167.)

Counsel for plaintiffs urge that the demurrer admits the value of the land to have been $86,000, that is to say, $50,000 for mining purposes, $25,000 for dam and reservoir purposes, $8,000 for agricultural purposes, and $3,000, the alleged value of the water rights. It is an erroneous theory that the petition alleges the market value to have been $86,000, the aggregate of the values alleged for the specified purposes. Some of these purposes may be incompatible, so that if the land be applied to one, its use would necessarily be prevented for one or all the other purposes. All the elements entering into the market value may be considered; but if the use of the land for reservoir purposes would prevent its use for agricultural purposes, and that would seemingly be the case, it is unreasonable to suppose that the market value would be equal to its value for the two purposes combined. The same is true as to the use for either mining or reservoir purposes, if the occupation of the land for one would exclude the other. But we have endeavored to show that the facts with reference to value for mining and reservoir purposes are not well pleaded, and are not therefore admitted by the demurrer, for the reason that the values as alleged may be remote and speculative and therefore incompetent as elements affecting market value. If remote and speculative they would have been properly excluded. Intending to show that the award was unjust and determined upon erroneous principles, it was incumbent upon plaintiffs to make that fact clearly to appear by the petition. Otherwise it is insufficient, even if the facts when well pleaded would constitute ground for equitable relief.

6. By several connected averments in the petition, it is sought to raise the question of the necessity for taking the land in controversy and the good faith of the city in condemning the same. The intention seems to be to deny the necessity for the proposed water works for the lawful use of the city and its inhabitants, rather than the necessity for taking the land of plaintiffs in constructing the works as

planned. Without setting out any of the allegations of the condemnation petition, it is alleged that the basic and jurisdictional facts therein alleged "were and are untrue, in that the said city of Cheyenne has and had adequate and abund- ·ant water and water storage facilities and capacity to supply all the present and future needs and demands of said city and its inhabitants, and for all the purposes for which said city is lawfully authorized to supply water; that said proceedings were instituted, and said land is desired, for the unauthorized and *ultra vires* purpose only of enabling said city to supply water for irrigation and sanitary purposes in large quantities to the inhabitants of, and live stock, residing in and kept at a certain military Brigade Post of the United States, situated outside of the corporate limits of said city, and under and by virtue of an *ultra vires* and unlawful contract so to do made by and between the City of Cheyenne and said United States Government; that said proceedings were therefore brought in bad faith and not for any purpose authorized by law."

That the alleged purpose of supplying water to the inhabitants of and live stock kept at said military Post was or would be unauthorized and *ultra vires,* that the contract therefor between the city and the United States was *ultra vires* and unlawful, and that the condemnation proceedings were therefore brought in bad faith and not for any authorized purpose, are mere conclusions of law, and not sufficient to put the matter in issue without the facts upon which such conclusions are based. The facts alleged upon which the sufficiency of the petition in this connection must be determined are, that the city has and had an adequate and abundant water supply and storage facilities for all lawful purposes; and that the condemnation proceedings were instituted and the land is desired for the purpose only of enabling the city to supply water as stated to said military Post, under a contract so to do. It is not expressly denied, nor do we think that the effect of the averments is to deny that the proposed water works for which the land is taken

are intended as a part of the system of water works con-
structed and maintained by the city for its lawful uses, and
will when completed constitute a part of that system; or that
water for the lawful use of the city and its inhabitants is
intended to be, and will be, accumulated by the dam and
reservoir for which the land of plaintiffs is required, and
will be conducted by means of said system of water works
into the city for the use of the city for the extinguishment
of fires and other expressly authorized uses, in common
with water otherwise obtained and distributed by means of
said system.   A city may have an abundant supply of water
with inadequate or inconvenient means for distributing
the same, or rendering it available for all the purposes for
which a system of water works may lawfully be constructed
and maintained;   and it may lawfully construct a plant
larger than present necessities may require, in order to am-
ply provide for seasons of drouth and for reasonably an-
ticipated demands in view of the prospective growth of the
city.   The petition furnishes no facts concerning the pres-
ent or prospective condition of the city or the nature of its
water facilities or distributing works.   It is not alleged that
any part of the plan of the city in constructing its pro-
posed water works consists in constructing distributing
works at said Post, nor is it alleged how that place is to
be supplied from the works in course of construction.

The necessity for making any proposed work or improve-
ment for which property may be taken under the power of
eminent domain is purely a legislative question, and where,
as here, there is no constitutional or statutory provision to
the contrary, whether proposed municipal water works are
demanded by the lawful needs of the municipality, and
when, where, and in what manner they shall be constructed
are matters resting exclusively with the municipal author-
ities, under the power conferred by law.   (Lewis' Em.
Dom., 3rd Ed., sec. 597;  3 Abbott's Mun. Cor., sec. 755;
Lynch v. Forbes, 161 Mass. 302;  Tel. Co. v. R. R. Co.,
(Utah) 65 Pac. 735;  Nalle v. Austin, (Tex.) 21 S. W.

375, 381.) In the case last cited this principle is stated as follows: "The necessity for an increased system of water-works is a matter resting within the discretion of its council, and its exercise of that discretion will not be controlled when performed within the line of the charter powers, except in case of fraud. The right to judge of the necessity of an increase of water system is not denied, because the city may be supplied with water; but the right is one of a continuing nature, that may be, in the wisdom of the city council, exercised whenever they fairly determine that the increased necessities of the public demand it." So far as the question of necessity for taking the particular land is concerned it was involved in the condemnation proceedings, and the plaintiffs were thereby concluded from raising the question in a collateral suit, except upon some ground available in equity to avoid a judgment regularly entered.

From what has been said it is clear that the averment to the effect that the city is abundantly supplied with water and water storage facilities for all lawful purposes, is not alone sufficient upon which to predicate the charge of bad faith on the part of the city, and we think the averment with reference to the contract for supplying water to the military Post and the purpose of the city in that respect is likewise insufficient because indefinite and uncertain. The possibility that the city may in the future dispose of a portion of its public water supply for purposes not expressly authorized does not affect its right to condemn land required for the construction of a system of water works which has been determined upon under the power conferred by law. (National Docks R. R. Co. v. Central R. R. Co., 32 N. J. Eq. 755; 765.) The terms of the alleged contract are not set out, and it cannot be held, as we would be compelled to hold to sustain this petition, that the city is without power under any circumstances to furnish water to places outside the corporate limits, or to persons or for purposes not expressly covered by the statutes conferring authority to construct and maintain water works It is well settled that a munici-

pality may devote to other purposes that portion of its
public property not required for public use without inter-
fering with the public character of the property, or the
right to acquire it, where the original and main purpose is
that which the law authorizes. (Spaulding v. Lowell, 23
Pick., 71; Slingerland v. Newark, 54 N. J. L. 62; Kau-
kauna Co. v. Green Bay &c. Canal Co., 142 U. S. 254;
Nalle v. Austin (Tex.), 21 S. W. 375; Rogers v. City of
Wickliffe, (Ky.) 94 S. W. 24; Green Bay &c. Co. v.
Kaukauna Co., 70 Wis. 635; Roberts v. Cambridge, 164
Mass. 176; Mayo v. Village Fire Co., 96 Me. 539; Pikes
Peak Power Co. v. Colorado Springs, 105 Fed. 1; Crouch
v. City of McKinney, 47 Tex. Civ. App. 54; Atty. Gen'l.
v. City of Eau Claire, 37 Wis. 400; Moore v. Sanford, 151
Mass. 285; Omaha Water Co. v. City of Omaha, 162 Fed.
225; Nichols on the Power of Em. Dom., sec. 225.)

In the leading case of Spaulding v. City of Lowell,
*supra,* it was sought to recover back a tax that had been
paid to the city, on the ground that the tax had been col-
lected for the purpose of building a market house larger
and more expensive than the necessities of the city re-
quired, and that a part of the building, after its construc-
tion, was rented to various parties at rates prescribed by
the city council. In the opinion by Chief Justice Shaw it is
said: "If this had been a colorable act, under the pretense
of exercising a legal power, looking to other and distinct
objects beyond the scope of the principal one, it might be
treated as an abuse of power, and a nullity. But we per-
ceive no evidence to justify such a conclusion, in the present
case. The building of a market house was the principal
and leading object, and every thing else seems to have been
incidental and subordinate. We cannot therefore say that it
was such an excess of authority as to invalidate the acts,
which they might rightfully do. As to the size and other
circumstances of the building, if the accomplishment of the
object was within the scope of the corporate powers of the
town, the corporation itself was the proper judge of the

fitness of the building for its objects, and it is not competent in this suit to inquire whether it was a larger or more expensive building that the exigencies of the city required."

In Slingerland v. Newark, *supra,* the court had under consideration and review proceedings taken by the City of Newark to condemn lands for the purpose of constructing and maintaining a pipe line or lines to be used in supplying the city with water for public use. It appeared that a contract between a water company and the city provided that the former should construct water works capable of supplying the municipality with a certain quantity of water per day and to furnish therefrom such water as might be necessary for the use of the city and inhabitants at a stated price. The city was given an option within one year after the completion of the works, of purchasing the same, with the water rights and water supplying the same, and the contract provided that if the option should be exercised, then, for the period of eleven years from the date of the contract the city should not use from said works more than a certain quantity of water per day, and the company should have the right to divert from the works whatever the city and its inhabitants did not use, and should keep all the works in good order and repair. The option to purchase was exercised. Answering its contention, that the fact that the water company was permitted to use some of the water rendered the condemnation proceedings invalid as for a private use, the court say: "The mere fact that, as a natural incident to the securing of a public water supply, more water is obtained than is now requisite for public purposes, and that the city disposes of the surplus for an outside use, does not deprive the condemnation of its public character. The power to construct and maintain the works still rests on the municipal public use, not on the disposition of the accidental excess."

The Supreme Court of the United States, considering a similar question, say: "It is probably true that it is beyond the competency of the state to appropriate to itself

the property of individuals for the sole purpose of creating
a water power to be leased for manufacturing purposes.
This would be a case of taking the property of one man
for the benefit of another, which is not a constitutional
exercise of the right of eminent domain.   But if, in the
erection of a public dam for a recognized public purpose,
there is necessarily produced a surplus of water which
may properly be used for manufacturing purposes, there is
no sound reason why the State may not retain to itself the
power of controlling or disposing of such water as an inci-
dent of its right to make such improvement.  *   *   *   *
As there is no need of the surplus running to waste, there
was nothing objectionable in permitting the State to let out
the use of it to private parties and thus reimburse itself for
the expense of the improvement."    Kaukauna v. Green Bay
&c. Canal Co., *supra*.)

In Rogers v. City of Wickliffe, *supra,* it appeared that
the City had contracted with one Henderson, the owner of
a farm adjoining the city to furnish him from the
city water mains water for the exclusive domestic use
of his family at double the price paid by citizens of
similar residence, he to put in and keep in repair such
hydrants as he may deem necessary for his use at his
own expense.  The action was brought to enjoin the city
from carrying out the contract on the ground that it was
beyond its power to so contract.  It was not alleged that
there was not sufficient water for the necessary use of the
residents and also to supply the water provided by the
contract.  A demurrer to the petition was sustained.  The
court say: "The case of the City of Henderson v. Young,
83 S. W. 583, is conclusive of this case.  In that case the
court said: 'In the management and operation of its elec-
tric plant a city is not exercising its governmental or legis-
lative powers, but its business powers, and may conduct it
in the manner which promises the greatest benefit to the
city and its inhabitants in the judgment of the city council,
and it is not in the province of the court to interfere with

the reasonable discretion of the council in such matters.' This applies to furnishing water by a city as well as electricity. The contract with Henderson appears, from its terms, to be a beneficial one for the city. If, however, it was made to appear that to furnish Henderson there would not be sufficient water remaining to supply the residents of the city, the case would be different."

In another case the Kentucky court held that a city has no power to contract to extend its water works system to an adjoining city, though it may sell any excess of its product to outsiders. In that case it appeared that the defendant city had entered into a contract which required it to put in all necessary water mains and hydrants in the other city and maintain them. (Dyer v. City of Newport, 94 S. W. 25.) In Mayo v. Village Fire Co., *supra*, it was held by the Supreme Judicial Court of Maine that a municipal corporation may be authorized, as one of the agencies of government, to purchase and pay for, by money raised by taxation or otherwise, an existing water works system to supply the municipal wants and for the domestic use of its inhabitants; and that if the purchase be made in good faith for those main and primary purposes, the constitutionality of the legislation authorizing the purchase, and the action thereunder, including the raising of money by taxation therefor, is not affected by the fact that incidentally the municipal corporation may be compelled to carry out the obligation of the original water company in furnishing water for some takers outside the limits of the purchasing municipality. In Massachustees it was said as to a contract whereby some of the water from the municipal reservoir was allowed to be used by an outsider, that it was not unlawful; but that the power to make such a contract might be limited to the surplus naturally incident to the taking of water for public use. It appeared that in obtaining a water supply for the city certain water rights of the other party to the contract would be taken, and the contract was made to lessen the effect of such

taking.  As to that the court say:  "But this contract was made with one from whom more water was taken at the same time, and therefore in its practical effect merely cut down the amount taken from the plaintiff and to be paid for by the defendant,—a perfectly lawful object."  (Roberts v. Cambridge, 164 Mass. 176.)

In Pikes Peak Power Co. v. Colorado Springs, *supra*, it appeared that the assignor of plaintiff had contracted with the city to drive a tunnel through a mountain spur to be used in connection with a proposed reservoir for the purpose of providing an increased water supply for the city, and whereby also the city would be furnished power for electric lighting purposes.  It was an expensive undertaking, and as a part of the consideration for the work to be performed by the contractor, he was granted the right and privilege of using the power so provided in supplying the city with electric light, and of laying and maintaining and operating conduits, cables and poles, in the streets and alleys for the transmission and sale to the city of electricity for the development of electric power; and the privilege of renting such conduits, etc.; also the right to divert and use all the water in the streams, ditches, flumes, pipe lines, conduits, and reservoirs of the city, on condition that the water so diverted should be returned unimpaired to the water system.  The city sought to avoid the contract on the ground that it was made without authority.  It was held that in contracting for water works to supply itself and inhabitants with water a city is not exercising its governmental or legislative powers, but its business or proprietary powers; and that the purpose of such a contract as the one referred to is not to govern its inhabitants, but to obtain a private benefit for the city itself and its residents.  And the court say:  "Now, what is the real contention of the counsel for the city here?  It is that, while the city council might lawfully have contracted for these public utilities, and have taxed its constituents, and have paid out their money to obtain them, it had no authority to procure them

for and to pay for them with the idle water power that existed in the water system of the city, without the expenditure of a dollar of the money of the citizens. It is, in fact, that municipal corporations hold all that part of public utilities which they cannot apply to customary municipal uses in trust to waste to the loss of their *cestuis que trustent,* and not in trust to use for their benefit. This proposition, when reduced to its last analysis, finds no support in reason or authority. It is true, as counsel for the city assert, that the water, the water system, and the other public utilities of a municipality are held by it and by its officers in trust for its citizens, and for the public; that neither the city nor its officers can renounce this trust, disable themselves from performing their public duties, or so divert or impair these utilities that they are rendered inadequate to the complete performance of the trust under which they are held. (Citing authorities.) But it is equally true that the municipalities and their officers have the power, and it is their duty, to apply the surplus power and use of all public utilities under their control for the benefit of their cities and citizens, provided, always, that such application does not materially impair the usefulness of these facilities for the purposes for which they were primarily created. (Citing authorities.) * * * * This court held, after careful consideration, and its decision was subsequently affirmed by the supreme court (Union Pac. Ry. Co. v. Chicago, R. I. & P. Ry. Co., 163 U. S. 564, * * *) that, if a corporation necessarily acquires for the conduct of its corporate business facilities whose entire capacity is not needed for its corporate use, it is not required to hold them in idleness; but it has the power, and it is its duty, alike to its stockholders and the public, to lease or otherwise apply the surplus use for their benefit. In State v. City of Eau Claire, 40 Wis. 533, and Green Bay & M. Canal Co. v. Kaukauna Water-Power Co., 70 Wis. 635, the supreme court of Wisconsin held that, where a city had legislative authority to erect a dam for the pur-

pose of waterworks for the city, it might lawfully lease for private purposes any excess of water not required for its waterworks. This is a just and reasonable rule. It is a rule inconsistent with no principle of law, or of equity, and in accord with that common sense and common business practice which recognize as a public good the growth of two blades of grass where but one grew before, and the conversion of waste to use."

As a municipal corporation may lawfully extend its system of water works and provide additional reservoir facilities for the purpose not only of increasing its water supply, but as well for the purpose of improving the method of caring for and distributing the same, and whether, when, and in what manner it shall so do are matters exclusively within its discretion, when properly exercised and in good faith; and may further dispose of any excess of water supplied by the system for other than purely municipal uses, it follows that a bare allegation that a contract by which the municipality has engaged to supply water from such system of water works is *ultra vires* and unlawful is insufficient to justify a court of equity in avoiding it, or in restraining the work of constructing the system or the acquiring or taking of land for that purpose. The court is entitled, and before answering the complaint the city is entitled, to require that the material terms and conditions of the contract be set out, and the circumstances under which it was made, so that the facts when so alleged may show the invalidity of the contract, if it be invalid. The averment we are considering rests upon the contract referred to, and the intention seems to be to question the good faith of the city on the ground that no necessity exists in fact for the proposed water works for which the land is required. We do not consider the effect, if any, upon this case, or otherwise, of the recent act, approved February 16, 1911, empowering any city heretofore incorporated under special charter, and having a population of not less than 10,000 inhabitants according to the last United States census, to enter into and fully perform contracts for supplying water

to any military post of the United States, situated without the corporate limits but adjoining or in the immediate neighborhood of such city, and ratifying and confirming any and all such contracts heretofore made between any such city and the United States government.

7. It is further alleged that no ordinance has been enacted by the city council authorizing or directing the condemnation or taking of said land; and that the condemnation petition was insufficient in that it failed to allege that the city council had ever judicially determined or passed upon the necessity for the taking and condemnation of the land for the purposes set forth in section 2915, and that the defendants failed to show that fact in the proceedings. We doubt the necessity of an order on the part of the council specifically describing the land required and directing proceedings to condemn the same as a condition precedent to the institution of such proceedings. It would seem that a decision to construct the water works according to an approved plan and generally that all land and rights of way thereby required should be taken by condemnation if they could not be otherwise acquired would be sufficient. But the action authorizing or directing the taking of the necessary land is not required by statute to be expressed by ordinance, and, therefore, the council might act in that respect in any formal manner adequate for the purpose, as by resolution. (State v. Jersey City, 27 N. J. L. 493.) The condemnation petition is not required to state that the city council had judicially determined or passed upon the necessity of taking and condemning the land. It should perhaps be shown upon the hearing of the petition that the proper action had been taken by the corporate authorities. But the petition in the proceedings is not before us, and this is not the proper time or manner of objecting to its sufficiency. (Canyon Co. v. Toole (Ida.), 75 Pac. 609.) Nor are the proceedings themselves here for review as to the sufficiency of the evidence upon the hearing.

This disposes of all the questions in the case which we think necessary to consider. We conclude for the reasons

stated that the demurrers were properly sustained, and the judgment will therefore be affirmed.

BEARD, C. J., and SCOTT, J., concur.

## ON PETITION FOR REHEARING.

BEARD, CHIEF JUSTICE.

This case was decided April 3, 1911, 114 Pac. 677, and within the time allowed by the rules a petition and brief for rehearing was filed by counsel for plaintiffs in error, and at their request oral argument was heard by the court on said petition. Upon a re-examination of the questions involved and ably presented by counsel, both in their brief and oral argument, we are not so convinced of the unsoundness of the decision as announced in the opinion as to warrant a rehearing. The case was fully presented when submitted, and it must be conceded that some of the questions presented were not easy of solution to the satisfaction of the members of the court, owing to the somewhat disconnected and confusing condition of the various statutes bearing upon the subject. The opinion handed down expresses our best judgment in the case and we shall not attempt to restate our views in other language, further than to say, we think counsel in their argument for rehearing have overlooked the fact that some, at least, of the questions discussed were proper matters for investigation and decision in the condemnation proceedings, and not having been raised or presented in that proceeding cannot be properly considered in this case. The statute under which it is claimed the city proceeded, Sec. 3084, R. S. 1899, provides, "The court or judge may adjourn the proceedings from time to time, shall direct any future notice thereof to be given that may seem proper, shall have proofs and allegations of all parties interested touching the regularity of the proceedings," etc. It would seem from that provision that if, as here claimed, the city was proceeding irregularly and not according to law to condemn the property, or that the purpose for which it was sought to be condemned was not a public purpose, those matters could and

should have been presented and determined in that proceeding; and not having been there presented they cannot be raised in this action.

It is further urged that the court in its decision did not directly hold that the statute under which it is claimed the condemnation proceedings were conducted was not violative of the fourteenth amendment to the constitution of the United States, which provides, "nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." If there can be any doubt as to the holding of the court on that point, in order to remove all doubt, we now state that it was clearly the intention to hold the statute valid as against that objection. The court had no desire to leave the decision so uncertain in that respect as to embarrass the plaintiffs in error in presenting the question to the Supreme Court of the United States if they desire to do so. We shall be glad to be set right, if we have erred, by that court, for which and its decisions we entertain the highest respect.

Many points have been re-argued, but upon a re-examination of the entire case we perceive no good reason to depart from the decision as made. A rehearing is denied.

*Rehearing denied.*

SCOTT and POTTER, JJ., concur.